UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EASTWOOD ENTERPRISES, LLC,
Individually and on Behalf of
All Others Similarly Situated,

     Plaintiffs,

v.                   CASE NO:  8:07-cv-1940-T-33EAJ

TODD S. FARHA, PAUL L. BEHRENS,
THADDEUS BEREDAY, and
WELLCARE HEALTH PLANS, INC.,

     Defendants.
_____/

**<u>ORDER</u>**

This cause comes before the Court pursuant to Defendants WellCare Health Plans, Inc. ("Wellcare"), Todd S. Farha ("Farha") and Paul L. Behrens' ("Behrens") Joint Motion to Dismiss the Complaint (Doc. # 110) and Defendant Thaddeus Bereday's ("Bereday") Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint (Doc. # 112).  Plaintiffs filed an Omnibus Opposition thereto (Doc. # 115).  With the Court's permission, Defendants filed reply memoranda (Docs. # 131, 132).  In addition, Plaintiffs filed a Notice of Supplemental Authority in Support of Their Omnibus Opposition (Doc. # 120) and a Second Notice of Supplemental Authority in Support of Their Omnibus Opposition (Doc. # 133).  After careful consideration of the allegations of the Consolidated

Class Action Complaint for Violations of Federal Securities Laws (Doc. # 96), the parties' submissions, and the applicable law, the Court finds that Defendants' Motions are due to be denied.

I.   Background

Plaintiffs are five pension funds or government agencies that purchased shares of WellCare common stock at various times over the proposed class period, February 14, 2005, through October 25, 2007 (the "Class Period"). WellCare is a public corporation organized in Delaware whose common stock is traded on the New York Stock Exchange. WellCare provides managed care services -- through various plans offered by its subsidiaries -- to persons entitled to participate in government-sponsored healthcare programs, particularly Medicaid and Medicare. The individual defendants Farha, Behrens, and Bereday served as WellCare's Chief Executive Officer, Chief Financial Officer and General Counsel, respectively.

Plaintiffs bring this consolidated class action for violations of federal securities laws on behalf of themselves and all other similarly situated purchasers of the common stock of WellCare during the Class Period. The fraud alleged in the Complaint has two components. The first is an

accounting scheme involving a WellCare subsidiary, Comprehensive Reinsurance Ltd. ("Comp Re"), in which WellCare's reported earnings were allegedly overstated during the alleged class period ("the accounting scheme"). The result of the accounting scheme, Plaintiffs contend, is that WellCare avoided refunding money it owed to the states and improperly counted the non-refunded (and unearned) money as revenue and income in its consolidated financial statements, thereby deceiving investors by materially overstating WellCare's reported financial results. Secondly, Plaintiffs assert that Defendants deceived investors concerning WellCare's compliance with applicable Medicaid and Medicare regulations governing the marketing of health plans and the delivery of health care (the "Program Requirements"), which potentially exposed WellCare to substantial sanctions ("the compliance scheme").

The two fraudulent schemes were exposed to the public on October 24, 2007, when state and federal agents conducted a search of WellCare's headquarters, seizing documents and other items pursuant to a search warrant and issuing subpoenas for additional documents. Plaintiffs assert that the search "finally revealed to the market...that Defendants had engaged in the fraud alleged herein" and caused WellCare's stock price

to fall substantially by the next day.  (Complaint ¶¶ 269-70).

The three-count Complaint raises claims for violations of § 10(b) and Rule 10b-5 of the Securities and Exchange Act of 1934 ("the Exchange Act") against Defendants WellCare, Farha, and Behrens (count I); violations of § 20(a) of the Exchange Act against Defendants Farha, Behrens, and Bereday (count II); and violations of § 20A of the Exchange Act against Defendants Farha, Behrens, and Bereday (count III).

II.  Standards of Review

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff.  Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004).  Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint.  Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990).

The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations.  See Jackam v. Hosp. Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).  All that is required is "a short and plain statement of the claim."  Fed. R. Civ. P. 8(a)(2).

However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citations omitted).  Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

To allege a § 10(b) claim, Plaintiffs must plead the following *prima facie* elements:

> (1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the material misrepresentation or omission and the loss, commonly called "loss causation."

Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1236-37 (11th Cir. 2008).

In addition, Plaintiffs' § 10(b) claim must satisfy the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b).  Mizzaro, 544 F.3d

5

at 1237-38.   Under long-standing Eleventh Circuit precedent,
the particularity pleading requirement "serves an important
purpose in fraud actions by alerting defendants to the precise
misconduct with which they are charged and protecting
defendants against spurious charges of immoral and fraudulent
behavior." <u>Ziemba v. Cascade Int'l, Inc.</u>, 256 F.3d 1194, 1202
(11th Cir. 2001); <u>see also</u> <u>Anderson v. Transglobe Energy
Corp.</u>, 35 F. Supp. 2d 1363, 1369-70 (M.D. Fla. 1999) (holding
that "a securities-fraud complaint 'need only provide a
reasonable delineation of the underlying acts and transactions
constituting the fraud.'"). When measured against the
foregoing standards, the allegations of the Complaint are
sufficient to overcome a dismissal at this stage of the
proceedings.

III.  <u>Analysis</u>[1]

       Plaintiffs' Complaint provides sufficient facts in
support of its two fraud claims to satisfy the heightened
pleading standards of the PSLRA.   The Complaint identifies
each of the false and misleading statements made by the
Defendants during the Class Period, states where and when they

---

[1]The Court's analysis section of this Order is directly
derived in part from Judge Lazzara's decision in related case,
<u>Rosky v. Farha</u>, No. 8:07-cv-1952-T-26MAP, Doc. # 81 (M.D. Fla.
Mar. 20, 2009).

were made, and explains why the statements were false and misleading. Taken as a whole, the Complaint adequately alleges the Defendants' fraudulent schemes and related misstatements about WellCare's business that ultimately led to multiple government investigations of Defendants' illegal activities including a Deferred Prosecution Agreement, the resignations of Farha, Behrens and Bereday, and a restatement of WellCare's historical consolidated financial statements from 2004 through the first two quarters of 2007 (the "Restatement").

The Complaint describes in detail a scheme, directed by Defendants, whereby WellCare engaged in fraudulent transactions with its reinsurance subsidiary, reported those transactions as direct medical costs in its state regulatory filings in order to meet its specified medical loss ratios, thereby retained at least $46.5 million that it was legally required to refund to the states during the Class Period, and then reported those illegally-retained funds as profit in its consolidated financial statements, thus artificially inflating its net income and earnings per share-diluted. The Complaint alleges this scheme based on, among other allegations, the guilty plea of a WellCare employee, WellCare's admission in its Restatement that it falsely inflated its net income, and

7

the first-hand accounts of former employees whom Defendants Farha and Behrens personally and repeatedly instructed to execute that precise fraud.

The Complaint also specifically alleges that Defendants acted with scienter in that they either had actual knowledge of the fraud, or acted with reckless disregard for the truth in failing to ascertain and disclose the true facts even though such facts were available to them.  In addition, the Complaint consistently draws a nexus between the Defendants' false and misleading statements and their motive to grossly inflate the Company's financial position while falsely assuring the SEC and the investing public that the Company was being operated in a lawful and proper manner, in order to boost the Company's stock price. The Complaint then supports these allegations through various first-hand accounts by former employees of the Company.

Plaintiffs' allegations raise a strong inference of scienter on the part of each of the Defendants, at least at this stage of the proceedings, despite Defendants' urging to the contrary.  As the Supreme Court has stated, under the "strong inference" of scienter standard set forth in the PSLRA, scienter allegations of a § 10(b) claim will survive a motion to dismiss "if a reasonable person would deem the

inference cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2510 (2007) ("Tellabs I").  The Complaint alleges that Defendants knew or recklessly disregarded that WellCare was falsifying its financial statements through sham transactions with Comp Re.

The confidential witness information is also more than adequate for this stage of the proceedings.  The Eleventh Circuit Court of Appeals has held that:

> [T]he weight to be afforded to allegations based on statements proffered by a confidential source depends on the particularity of the allegations made in each case, and confidentiality is one factor that courts may consider. Confidentiality, however, should not eviscerate the weight given if the complaint otherwise fully describes the foundation or basis of the confidential witness's knowledge, including the position(s) held, the proximity to the offending conduct, and the relevant time frame.

Mizzaro, 544 F.3d at 1240.  The Complaint includes sufficiently detailed confidential witness accounts that substantiate Plaintiffs' allegations regarding Defendants' direct involvement in, control over and knowledge of, the WellCare fraudulent accounting scheme.

Furthermore, Plaintiffs' allegations of insider stock sales support a strong inference of scienter.  Defendants allegedly sold more than 1.47 million shares of their

personally-held WellCare common stock for proceeds of approximately $90.25 million during the Class Period.  A complaint need not allege insider trading or pecuniary motive to plead a securities fraud claim successfully.  <u>Tellabs I</u>, 127 S. Ct. at 2511.  Nevertheless, allegations of personal financial motive "may weigh heavily in favor of a scienter inference."  <u>Id.</u>

Additionally, the investigations into WellCare by various government agencies only serve to bolster the inference of scienter at this stage of this action.  Courts commonly hold that pending government investigations are relevant and provide notice of a possible fraud, *i.e.*, that the pendency of an investigation serves to suggest that a fraud may have occurred and may not be ignored.  <u>See In re Hamilton Bancorp, Inc. Sec. Litig.</u>, 194 F. Supp. 2d 1353, 1359 n.4 (S.D. Fla. 2002); <u>see also</u> <u>In re Lernout & Hauspie Sec. Litig.</u>, 230 F. Supp. 2d 152, 165, 168 (D. Mass. 2002) (finding that an ongoing SEC inquiry was a red flag indicative of misconduct); <u>In re Oxford Health Plans, Inc. Sec. Litig.</u>, 51 F. Supp. 2d 290, 295 (S.D.N.Y. 1999) (finding that an active investigation by New York Attorney General was a relevant "red flag" to put auditor on notice of misconduct); <u>In re Health Mgmt. Inc. Sec. Litig.</u>, 970 F. Supp. 192, 203 (E.D.N.Y. 1997) (finding that an

10

SEC inquiry into company accounting practices was a "red flag" to put auditor on notice of suspicious activity).

The Plaintiffs point out and the Court notes that on May 5, 2009, Defendant WellCare entered into a Deferred Prosecution Agreement ("DPA") with the U.S. Attorney for the Middle District of Florida and the Florida Attorney General. (See DPA, Exh. 1 to Doc. # 133).   In the DPA, WellCare admitted that WellCare and its senior officers intentionally engaged in a criminal conspiracy to misappropriate Medicaid funds for the purpose of artificially inflating WellCare's reported income.  (DPA at ¶¶ 1-2,8; DPA Statement of Facts, Exh. 2 to Doc. #133 at ¶¶ 1,21) Specifically, in the DPA, WellCare admitted that, throughout the entire Class Period, "Wellcare, acting through its former officers ... knowingly and willfully conspired" to "falsely and fraudulently inflate [the] medical expenditure information" it reported to Florida. (DPA Statement of Facts at ¶ 1).  WellCare further admitted that the purpose of this criminal conspiracy was to "benefit WellCare through an increase in profits" by allowing it to retain approximately $40 million in Medicaid premiums that it was legally obligated to return to Florida (id. at ¶ 21(a) & ¶ 1); and that its "former officers and employees, acting within the scope of their duties and authorities, ...

11

engage[d] in meetings and other conduct in a concerted and organized effort to conceal and cover-up" the criminal conspiracy (id. at ¶ 21(c)).

The Court likewise finds that the Complaint adequately supports the compliance scheme allegations that WellCare misled investors about its compliance with Program Requirements. The Complaint describes in detail how Defendants' statements and omissions regarding WellCare's compliance with laws and regulations were materially misleading and created the false impression that WellCare acted in compliance with both its "Trust Program" and all applicable governmental laws and regulations. Plaintiffs adequately allege that Defendants' misstatements and their active concealment of the underlying violations of pertinent laws and regulations applicable to WellCare's business were material to investors.

Despite Defendants' assertions to the contrary, Plaintiffs adequately plead loss causation. The Complaint alleges that, as a result of Defendants' misrepresentations and omissions that concealed WellCare's true financial condition and its failure to comply with the applicable laws and regulations, the Company's stock was artificially inflated during the Class Period until the truth about WellCare was

revealed.    Plaintiffs  allege  that  when  the  truth  about WellCare  was  revealed,  beginning  with  the  raid  on  October  24, 2007,  by  federal  agents,  the  stock  price  collapsed  from  over $122 per share at the close of trading on October 23, 2007, to close  at  approximately  $42.67  per  share  on  October  25,  2007. More  importantly,  however,  loss  causation  is  a  fact-based inquiry that is generally not proper to resolve on a motion to dismiss.  See In re PSS World Medical, Inc. Sec. Litig., 250 F. Supp. 2d 1335, 1351 (M.D. Fla. 2002).

As  for  Defendant  Bereday's  argument  that  Plaintiffs'  § 20A  claim  fails  because  the  Complaint  does  not  allege  a predicate  violation  of  the  federal  securities  laws  against Bereday,  the  Court  finds  that  the  § 20(a)  violation  alleged  by the  Plaintiffs  in  count  II  against  Bereday  can  serve  as  the predicate  Exchange  Act  violation  for  the  § 20A  claim.   In re Refco, Inc. Sec. Litig., 503 F. Supp. 2d 611, 665-66 (S.D.N.Y. 2007).

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Defendants  WellCare,  Farha  and  Behrens'  Joint Motion  to  Dismiss  the  Complaint  (Doc. # 110)  is **DENIED**.

(2)  Defendant  Bereday's  Motion  to  Dismiss  Plaintiffs'

13

Consolidated Class Action Complaint (Doc. # 112) is **DENIED**.

(3)   Defendants shall file their answer and defenses to the Consolidated Class Action Complaint for Violations of Federal Securities Laws (Doc. # 96) within thirty (30) days of the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 28th day of September, 2009.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record

14