UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| EASTWOOD ENTERPRISES, LLC, Individually ) and on Behalf of All Others Similarly Situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TODD S. FARHA, PAUL L. BEHRENS, )<br>THADDEUS BEREDAY, and WELLCARE )<br>HEALTH PLANS, INC., )<br>)<br>Defendants. )<br>_____ ) | CASE NO.:  8:07-cv-1940-T-33EAJ |

**ANSWER OF DEFENDANT THADDEUS BEREDAY TO CONSOLIDATED CLASS
ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**

Defendant Thaddeus Bereday ("Bereday") hereby answers the allegations in Lead Plaintiffs' Consolidated Class Action Complaint For Violations of Federal Securities Laws (the "Complaint") filed October 31, 2008. To the extent the paragraphs of the Complaint are grouped under headings and subheadings, Bereday responds generally that such headings and sub-headings (which are not repeated below) state legal conclusions and pejorative inferences as to which no response is required. Except as explicitly admitted herein, each and every allegation of the Complaint is denied. Bereday further answers the numbered paragraphs of the Complaint as follows:

## ANSWER

1.     Bereday denies the allegations in paragraph 1 of the Complaint.

2.     Bereday admits that WellCare Health Plans, Inc.'s ("WellCare") stock price increased approximately 222% during the alleged Class Period. Bereday lacks knowledge and information regarding the allegation in paragraph 2 of the Complaint regarding analysts' expectations about WellCare's earnings and the alleged statement made by WellCare, and on that basis denies them. Bereday denies the remaining allegations of paragraph 2 of the Complaint.

3.     Bereday denies the allegations in paragraph 3 of the Complaint.

4.     Bereday denies the allegations in paragraph 4 of the Complaint.

5.     Bereday denies the allegations in paragraph 5 of the Complaint.

6.     Bereday denies the allegations in paragraph 6 of the Complaint.

7.     Bereday admits WellCare's stock price increased during some portions of the alleged Class Period. Bereday admits that Todd Farha served as WellCare's Chief Executive Officer during the Class Period. Bereday admits that Paul Behrens served as WellCare's Chief Financial Officer during the Class Period. Bereday admits that he served as WellCare's General

3797535_3.DOC

Counsel and Chief Compliance Officer during the Class Period.  Bereday admits that Farha,
Behrens and Bereday sold shares of WellCare common stock during the Class Period.  Bereday
denies the remaining allegations in paragraph 7 of the Complaint.

8.     Bereday admits that CIBC World Markets ("CIBC") issued a report regarding
WellCare in March 2007.  Bereday admits that paragraph 8 quotes language from the March
2007 CIBC report.  Bereday admits that Goldman Sachs issued a report regarding WellCare in
April 2007.  Bereday denies the allegations that Farha and Behrens stated analysts were
"sensationaliz[ing] routine information to generate trading volume and profit" or stated certain
reinsurance transactions were "legal."  Bereday lacks knowledge and information regarding the
remaining allegations of paragraph 8 of the Complaint, and on that basis denies them.

9.     Bereday admits that in May 2007, *The New York Times* published an article that
discussed, in part, WellCare.  Bereday admits that, at times, Farha stated that WellCare had "zero
tolerance" for violations of its compliance policy, and that WellCare was trying to set "best in
class" standards for how agents conducted themselves.  Bereday lacks knowledge and
information regarding the remaining allegations of paragraph 9 of the Complaint, and on that
basis denies them.

10.    Bereday admits that federal and state agents executed a search warrant on
WellCare's Tampa headquarters on October 24, 2007.  Bereday admits that agents seized things
in connection with the execution of the search warrant.  Bereday lacks knowledge and
information regarding the remaining allegations of paragraph 10 of the Complaint, and on that
basis denies them.

11.    Bereday admits that WellCare's closing stock price was approximately $122 per
share on October 23, 2007.  Bereday admits that WellCare's closing stock price was

approximately $42 per share on October 25, 2007. Bereday admits that between October 23,

2007 and October 25, 2007, WellCare's market capitalization was reduced by approximately $3

billion. Bereday denies the remaining allegations in paragraph 11 of the Complaint.

12.     Bereday admits that Gregory West was an employee of a WellCare subsidiary.

Bereday admits that on December 21, 2007, Mr. West entered a plea agreement with respect to a

charge brought by the United States Attorney for the Middle District of Florida. Bereday admits

that the allegations of paragraph 12 of the Complaint quotes language from Mr. West's plea

agreement. Bereday lacks knowledge and information regarding the allegation that former

employees have identified Mr. West's supervisors, and on that basis denies it. Bereday admits

that Peter Clay was an employee of a WellCare subsidiary. Bereday admits there is a federal

criminal investigation. Bereday lacks knowledge and information regarding the status of Mr.

West's cooperation in that investigation, and on that basis denies these allegations. Bereday

denies the remaining allegations of paragraph 12 of the Complaint.

13.     Bereday lacks knowledge and information regarding the allegations in paragraph

13 of the Complaint, and on that basis denies them.

14.     Bereday admits that WellCare formed a Special Committee after October 24,

2007. Bereday admits that in January 2008, WellCare announced that the Special Committee

had provided a preliminary report with recommendations to the Board of Directors. Bereday

admits that in January 2008, WellCare announced that Farha, Behrens and Bereday had each

resigned from their respective positions with WellCare. Bereday admits that the terms of Farha,

Behrens and Bereday's resignations are included in filings that WellCare made with the

Securities Exchange Commission ("SEC"). Bereday lacks knowledge and information regarding

the allegation in paragraph 14 of the Complaint concerning Farha and Behrens' compensation

and/or any equity awards, and on that basis denies them. Bereday denies the remaining allegations of paragraph 14 of the Complaint.

15.     Bereday admits that on July 21, 2008, WellCare issued a press release and filed a Form 8-K (the "July 21 8-K") with the SEC. Bereday admits that the allegations of paragraph 15 of the Complaint quote language from the July 21 8-K. Bereday denies the remaining allegations of paragraph 15 of the Complaint.

16.     Bereday admits that the July 21 8-K included statements regarding the anticipated impact of the restatement of previously issued consolidated financial statements for the years ended December 31, 2004, 2005 and 2006, and condensed consolidated financial statements for the six months ended June 30, 2007. Bereday admits that WellCare's July 21 8-K stated that net income and diluted earnings per share for the year ended December 31, 2004 were expected to be reduced by approximately 14%. Bereday denies the remaining allegations of paragraph 16 of the Complaint.

17.     Bereday admits that the quoted language in paragraph 17 of the Complaint was part of a risk factor disclosed in WellCare's July 21 8-K. Bereday denies the remaining allegations of paragraph 17 of the Complaint.

18.     Bereday admits that the U.S. Attorney's Office for the Middle District of Florida and the SEC have commenced investigations. Bereday admits that on October 31, 2008, WellCare's closing stock price was approximately $22 per share. Bereday admits that from October 24, 2007 through the date of the Complaint, WellCare did not file any financial statements with the SEC. Bereday admits on information and belief that by the date of the Complaint, WellCare had not yet filed the results of its restatement. Bereday denies the remaining allegations of paragraph 18 of the Complaint.

3797535_3.DOC

19.    Bereday admits that Lead Plaintiffs have asserted claims under Sections 10(b), 20(a) and 20A of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78(t), and 78t-1, and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

20.    Bereday admits that this court has jurisdiction over this action.

21.    Bereday admits that venue is proper in this district.  Bereday admits that WellCare's principal place of business is in Tampa, Florida, which is located in this district. Bereday denies the remaining allegations in paragraph 21 of the Complaint.

22.    Bereday denies the allegations in paragraph 22 of the Complaint.

23.    Bereday denies that New Mexico State Investment Council purchased shares of WellCare common stock during the Class Period at artificially inflated prices.  Bereday lacks knowledge and information regarding the remaining allegations of paragraph 23 of the Complaint, and on that basis denies them.

24.    Bereday denies that Public Employees Retirement Association of New Mexico purchased shares of WellCare common stock during the Class Period at artificially inflated prices.  Bereday lacks knowledge and information regarding the remaining allegations of paragraph 24 of the Complaint, and on that basis denies them.

25.    Bereday denies that Teachers' Retirement System of Louisiana purchased shares of WellCare common stock during the Class Period at artificially inflated prices.  Bereday lacks knowledge and information regarding the remaining allegations of paragraph 25 of the Complaint, and on that basis denies them.

26.    Bereday denies that Policemen's Annuity and Benefit Fund of Chicago purchased shares of WellCare common stock during the Class Period at artificially inflated prices.  Bereday

3797535_3.DOC

lacks knowledge and information regarding the remaining allegations of paragraph 26 of the Complaint, and on that basis denies them.

27.     Bereday denies that Public School Teachers' Pension & Retirement Fund of Chicago purchased shares of WellCare common stock during the Class Period at artificially inflated prices.  Bereday lacks knowledge and information regarding the remaining allegations of paragraph 27 of the Complaint, and on that basis denies them.

28.     Bereday admits that New Mexico State Investment Council, Public Employees Retirement Association of New Mexico, Teachers' Retirement System of Louisiana, Policemen's Annuity and Benefit Fund of Chicago, and Public School Teachers' Pension & Retirement Fund of Chicago were appointed Lead Plaintiffs by this court by order dated March 11, 2008.  Bereday lacks knowledge and information regarding the remaining allegations of paragraph 28 of the Complaint, and on that basis denies them.

29.     Bereday admits that WellCare is a Delaware corporation that has its principal place of business at 8725 Henderson Road, Renaissance One, Tampa, Florida.  Bereday admits that one of WellCare's predecessors was WellCare Group, Inc.  Bereday admits that WellCare, through subsidiaries, provides managed care services to government-sponsored healthcare programs and offers members Medicaid and Medicare health plans and prescription drug plans.  Bereday lacks knowledge and information regarding the remaining allegations of paragraph 29 of the Complaint, and on that basis denies them.

30.     Bereday admits that Todd S. Farha ("Farha") was WellCare's Chief Executive Officer, President, and Chairman of the Board of Directors during the Class Period.  Bereday admits that Farha's signature appears on WellCare's Forms 10-K and Sarbanes-Oxley ("SOX") certifications filed during the Class Period.  Bereday admits that Farha resigned from WellCare

in January 2008. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 30 of the Complaint, and on that basis denies them.

31.    Bereday admits that Paul L. Behrens ("Behrens") was WellCare's Chief Financial Officer and Senior Vice President during the Class Period. Bereday admits that Behrens' signature appears on WellCare's Forms 10-K and 10-Q filings and SOX certifications filed during the Class Period. Bereday admits that before Behrens joined WellCare, Behrens was an accounting partner at Ernst & Young LLP. Bereday admits that Behrens resigned from WellCare in January 2008. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 31 of the Complaint, and on that basis denies them.

32.    Bereday admits that he was WellCare's Senior Vice President, General Counsel, and Secretary during the Class Period. Bereday admits that he was WellCare's Chief Compliance Officer as provided under its Trust Program. Bereday admits that before he joined WellCare's predecessor, he was a partner at the law firm of Brobeck, Phleger & Harrison, LLP and served as outside counsel to WellCare's predecessor. Bereday admits that during the Class Period, he sold a portion of his personal holdings of WellCare stock for gross proceeds (exclusive of taxes, cost basis and other transaction costs) of approximately $18 million. Bereday admits that he resigned from WellCare in January 2008.

33.    Bereday admits that Farha, Behrens and Bereday were officers who each participated in certain aspects of the management of WellCare. Bereday admits that from time to time, Farha, Behrens and Bereday were privy to confidential, proprietary information concerning WellCare. Bereday denies the remaining allegations of paragraph 33 of the Complaint.

34.    Bereday admits that Lead Plaintiffs purport to bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) on behalf of all those who

purchased or otherwise acquired the common stock of WellCare between February 14, 2005 and October 25, 2007 inclusive, and who were allegedly damaged thereby. Bereday admits that Lead Plaintiffs purport to exclude from the class Defendants, the officers and directors of WellCare, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

35.     Bereday admits that during the Class Period, WellCare's common stock was traded on the New York Stock Exchange ("NYSE"). Bereday admits that as of August 1, 2007, WellCare had approximately 42 million shares of common stock issued and outstanding. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 35 of the Complaint, and on that basis denies them.

36.     Bereday lacks knowledge and information regarding the allegations of paragraph 36 of the Complaint, and on that basis denies them.

37.     Bereday lacks knowledge and information regarding the allegations of paragraph 37 of the Complaint, and on that basis denies them.

38.     Bereday lacks knowledge and information regarding the allegations of paragraph 38 of the Complaint, and on that basis denies them.

39.     Bereday lacks knowledge and information regarding the allegations of paragraph 39 of the Complaint, and on that basis denies them.

40.     Bereday admits that certain of WellCare's subsidiaries provide managed care services to Medicaid and Medicare recipients.

41.     Bereday admits that the Medicaid program provides services to eligible individuals. Bereday admits that Medicaid is state-operated and implemented and that Medicaid

3797535_3.DOC

is funded by state and federal governments. Bereday admits that certain of WellCare's subsidiaries operated Medicaid plans in certain states.

42.     Bereday admits that Medicare is a federal program that provides eligible individuals a variety of hospital, medical insurance and prescription drug benefits. Bereday admits that Medicare is administered and funded by CMS. Bereday denies the remaining allegations of paragraph 42 of the Complaint.

43.     Bereday admits that under the Medicaid and Medicare programs, state and federal governments contract with various entities, including health maintenance organizations ("HMOs"), to provide primary or supplemental coverage to Medicaid and Medicare recipients. Bereday admits federal and state governments pay the contracting entity a premium for every recipient that enrolls in one of WellCare's health plans. Bereday admits there are per-member per-month premiums sometimes called "capitated" premiums, which are usually adjusted annually according to contract terms. Bereday denies the remaining allegations of paragraph 43 of the Complaint.

44.     Bereday admits that certain of WellCare's subsidiaries contract with individual health care providers, such as doctors, to provide required services. Bereday lacks knowledge and information regarding the allegation that most of WellCare's contracts with health care providers pay the providers on a fee-for-service basis, and on that basis denies it. Bereday denies the remaining allegations of paragraph 44 of the Complaint.

45.     Bereday admits that WellCare conducted an initial public offering ("IPO") of its common stock in July 2004. Bereday admits that from the time of WellCare's IPO through 2006, net income and overall enrollment in its plans increased. Bereday admits that the offering price for WellCare's common stock was $17 per share. Bereday admits that WellCare's closing

stock price was over $122 per share at some point in October 2007. Bereday denies the remaining allegations of paragraph 45 of the Complaint.

46.    Bereday lacks knowledge and information regarding the allegations of paragraph 46 of the Complaint, and on that basis denies them.

47.    Bereday admits that WellCare issued a press release on November 1, 2005. Bereday admits that in the November 1 press release, WellCare raised its 2005 guidance. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 47 of the Complaint, and on that basis denies them.

48.    Bereday admits that Credit Suisse issued a report on May 9, 2005. Bereday admits that the allegations of paragraph 48 quote language from the May 9 Credit Suisse report. Bereday admits that CIBC issued a report on August 4, 2005. Bereday admits that the allegations of paragraph 48 quote from the August 4 CIBC report. Bereday admits that CIBC issued a report on February 14, 2006. Bereday admits that the allegations of paragraph 48 quote from the February 14 CIBC report. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 48 of the Complaint, and on that basis denies them.

49.    Bereday admits that Farha stated 2006 was a transformative year for WellCare in a press release issued on February 13, 2007. Bereday admits that CIBC issued a report on August 2, 2006. Bereday admits that the allegations of paragraph 49 quote language from the August 2 CIBC report. Bereday admits that CIBC issued a report on November 1, 2006. Bereday admits that the allegations of paragraph 49 quote language from the November 1 CIBC report. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 49 of the Complaint, and on that basis denies them.

50.    Bereday admits that WellCare's closing stock price was approximately $122.27 per share on October 23, 2007.  Bereday further admits that federal and state agents executed a search warrant on WellCare's Tampa headquarters on October 24, 2007.  Bereday lacks knowledge and information regarding the remaining allegations of paragraph 50 of the Complaint, and on that basis denies them.

51.    Bereday denies the allegations in paragraph 51 of the Complaint.

52.    Bereday admits that the allegations of paragraph 52 purport to summarize a metric called "medical loss ratio," which WellCare refers to as "medical benefits ratio," and which is described in, among other places, WellCare's 2005 Form 10-K.  Bereday denies the remaining allegations of paragraph 52 of the Complaint.

53.    Bereday admits that for 2004, WellCare reported net income of approximately $49 million.  Bereday admits that for 2004, WellCare reported revenue of approximately $1.4 billion.  Bereday admits that for 2004, WellCare reported a profit margin of 3.5%.  Bereday admits that for 2005, WellCare reported a profit margin of 2.7%.  Bereday denies that for 2006, WellCare reported a profit margin of 3.6%.  Bereday admits that for the first quarter of 2007, WellCare reported a profit margin of 2.0%.  Bereday denies the remaining allegations of paragraph 53 of the Complaint.

54.    Bereday admits that WellCare filed with the SEC a Form 10-K for 2006 and that the allegations of paragraph 54 of the Complaint quote from that Form 10-K.  Bereday denies the remaining allegations of paragraph 54 of the Complaint.

55.    Bereday lacks knowledge and information regarding the allegation in paragraph 55 of the Complaint that the State of Florida generated a certain amount of WellCare's revenue during the Class Period, and on that basis denies it.  Bereday admits that the State of Florida

-11-

represented a significant percentage of the Company's revenue during the Class Period. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 55 of the Complaint, and on that basis denies them.

56.    Bereday lacks knowledge and information regarding the allegations of paragraph 56 of the Complaint, and on that basis denies them.

57.    Bereday denies the allegations in paragraph 57 of the Complaint.

58.    Bereday lacks knowledge and information regarding the allegations of paragraph 58 of the Complaint, and on that basis denies them.

59.    Bereday denies the allegations in paragraph 59 of the Complaint.

60.    Bereday denies the allegations in paragraph 60 of the Complaint.

61.    Bereday denies the allegations in paragraph 61 of the Complaint.

62.    Bereday denies the allegations in paragraph 62 of the Complaint.

63.    Bereday admits that Gregory West is a former employee of a WellCare subsidiary who pleaded guilty to a charge brought by the U.S. Attorney for the Middle District of Florida in December 2007. Bereday lacks knowledge and information regarding the allegation of paragraph 63 of the Complaint that Lead Plaintiffs have communicated with additional former employees regarding any of the allegations of the Complaint, and on that basis denies it. Bereday denies the remaining allegations in paragraph 63 of the Complaint.

64.    Bereday lacks knowledge and information regarding the allegations of paragraph 64 of the Complaint, and on that basis denies them.

65.    Bereday admits that Imtiaz Sattaur was President of WellCare of Florida during the period April 2003 through September 2006. Bereday denies the remaining allegations of paragraph 65 of the Complaint.

3797535_3.DOC

66.     Bereday admits that in August 2004, Mike Turrell was Vice President of Corporate Compliance and Regulatory Affairs.  Bereday lacks knowledge and information regarding the remaining allegations of paragraph 66 of the Complaint, and on that basis denies them.

67.     Bereday lacks knowledge and information regarding the allegations of paragraph 67 of the Complaint, and on that basis denies them.

68.     Bereday lacks knowledge and information regarding the allegations of paragraph 68 of the Complaint, and on that basis denies them.

69.     Bereday admits that Bill White served as WellCare's Corporate Controller during the Class Period.  Bereday lacks knowledge and information regarding the remaining allegations of paragraph 68 of the Complaint, and on that basis denies them.

70.     Bereday lacks knowledge and information regarding the allegations of paragraph 70 of the Complaint, and on that basis denies them.

71.     Bereday lacks knowledge and information regarding the allegations of paragraph 71 of the Complaint, and on that basis denies them.

72.     Bereday admits that WellCare entered a deferred prosecution agreement with the federal government.  Bereday denies the remaining allegations in paragraph 72 of the Complaint.

73.     Bereday denies the allegations in paragraph 73 of the Complaint.

74.     Bereday admits that from time to time, WellCare's Florida-based plans received premium rate adjustments, including increases, from the State of Florida.  Bereday lacks knowledge and information regarding the allegations of paragraph 74 of the Complaint regarding specific premium rate increases, and that premium rates had any relation to analyst expectations.  Bereday denies the remaining allegations of paragraph 74 of the Complaint.

3797535_3.DOC

75.     Bereday denies the allegation in paragraph 75 of the Complaint that WellCare's contracts with state and federal governments were WellCare's only source of revenue.  Bereday admits that WellCare filed with the SEC a Form 10-K that reported on the Company's 2006 financial results.  Bereday admits that the allegations of paragraph 75 quote from the 2006 Form 10-K.  Bereday denies the remaining allegations of paragraph 75 of the Complaint.

76.     Bereday denies the allegations in paragraph 76 of the Complaint.

77.     Bereday denies the allegations in paragraph 77 of the Complaint.

78.     Bereday admits that the allegations of paragraph 78 of the Complaint quote language from 42 C.F.R. § 438.104.  Bereday admits that the allegations of paragraph 78 of the Complaint include a partially accurate quote from WellCare's 2006 Form 10-K.  Bereday lacks knowledge and information regarding the remaining allegations of paragraph 78 of the Complaint, and on that basis denies them.

79.     Bereday admits that the allegations of paragraph 79 of the Complaint quote language from 42 C.F.R. § 438.700.  Bereday admits that the allegations of paragraph 79 of the Complaint contain a partially accurate quote from 42 C.F.R. § 417.479(d).  Bereday lacks knowledge and information regarding the remaining allegations of paragraph 79 of the Complaint, and on that basis denies them.

80.     Bereday denies the allegations in paragraph 80 of the Complaint.

81.     Bereday lacks knowledge and information regarding the allegations of paragraph 81 of the Complaint, and on that basis denies them.

82.     Bereday lacks knowledge and information regarding the allegations of paragraph 82 of the Complaint, and on that basis denies them.

83.    Bereday lacks knowledge and information regarding the allegations of paragraph 83 of the Complaint, and on that basis denies them.

84.    Bereday lacks knowledge and information regarding the allegations of paragraph 84 of the Complaint, and on that basis denies them.

85.    Bereday lacks knowledge and information regarding the allegations of paragraph 85 of the Complaint, and on that basis denies them.

86.    Bereday lacks knowledge and information regarding the allegations of paragraph 86 of the Complaint, and on that basis denies them.

87.    Bereday admits that the *St. Petersburg Times* published an article in December 2007 that discussed, in part, WellCare.  Bereday admits that the allegations of paragraph 87 of the Complaint quote language from the *St. Petersburg Times* article.  Bereday denies the remaining allegation of paragraph 87 of the Complaint.

88.    Bereday admits that in the spring of 2007, certain analysts raised questions regarding WellCare's medical loss ratio.  Bereday admits that WellCare denied any suggestion of impropriety regarding the Company's medical loss ratio.  Bereday admits that in a WellCare earnings conference call on May 8, 2007, Farha and Behrens addressed analysts' questions regarding the Company's medical loss ratio.  Bereday lacks knowledge and information regarding the remaining allegations of paragraph 88 of the Complaint, and on that basis denies them.

89.    Bereday admits that Credit Suisse issued a report on WellCare on March 9, 2007. Bereday admits that the allegations of paragraph 89 of the Complaint quote language from the March 9 Credit Suisse report.  Bereday lacks knowledge and information regarding the remaining allegations of paragraph 89 of the Complaint, and on that basis denies them.

90.     Bereday admits that CIBC issued a report on WellCare on March 12, 2007. Bereday admits that the allegations of paragraph 90 of the Complaint quote language from the March 12 CIBC report. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 90 of the Complaint, and on that basis denies them.

91.     Bereday admits that Goldman Sachs issued a report on WellCare on April 4, 2007 that discussed, in part, captive reinsurance. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 91 of the Complaint, and on that basis denies them.

92.     Bereday admits that *The Tampa Tribune* published an article on April 11, 2007 that discussed, in part, WellCare. Bereday admits that the allegations of paragraph 92 of the Complaint quote language from the April 11 *Tampa Tribune* article. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 92 of the Complaint, and on that basis denies them.

93.     Bereday admits that on April 12, 2007, WellCare filed with the SEC a Form 8-K that reported on Mr. Sattaur's April 6, 2007 resignation. Bereday admits that the allegations of paragraph 93 of the Complaint quote language from the April 12 Form 8-K. Bereday admits that the allegations of paragraph 93 of the Complaint quote language from a May 3, 2007 Stifel Nicolaus report. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 93 of the Complaint, and on that basis denies them.

94.     Bereday admits that *The Tampa Tribune* published an article on April 27, 2007 that discussed, in part, WellCare. Bereday admits that the allegations of paragraph 94 of the Complaint quote language from the April 27 *Tampa Tribute* article. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 94 of the Complaint, and on that basis denies them.

3797535_3.DOC

95.    Bereday admits that WellCare's closing stock price was approximately $93.44 per share on April 24, 2007. Bereday admits that WellCare's closing stock price was approximately $86.50 per share on April 27, 2007. Bereday admits that WellCare announced the Company's earnings for the first quarter of 2007 on April 30, 2007. Bereday admits that in its April 30 earnings announcement, WellCare announced that it would revise its 2007 guidance on May 7. Bereday admits that on May 7, 2007, WellCare increased its full-year 2007 guidance. Bereday further admits that WellCare revised its diluted earnings per share guidance from $4.10 to $4.20, to $4.65 to $4.75. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 95 of the Complaint, and on that basis denies them.

96.    Bereday admits that Credit Suisse issued a report on WellCare on May 8, 2007. Bereday admits that the allegations of paragraph 96 of the Complaint quote language from the May 8 Credit Suisse report. Bereday admits that CIBC issued a report titled "If You Mess With The Bull, You're Going To Get The Horns – 1Q07 Pre-Announced." Bereday denies that the allegations of paragraph 96 of the Complaint quote language from that CIBC report. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 96 of the Complaint and on that basis denies them.

97.    Bereday admits that WellCare held an earnings conference call on May 8, 2007. Bereday admits that allegations of paragraph 97 of the Complaint quote language that appears in a transcript of WellCare's May 8 earnings conference call. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 97 of the Complaint, and on that basis denies them.

98.    Bereday admits that WellCare's opening stock price was approximately $82.08 per share on May 7, 2007. Bereday admits that WellCare's closing stock price was

3797535_3.DOC

approximately $90.16 per share on May 8, 2007. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 98 of the Complaint, and on that basis denies them.

99.    Bereday lacks knowledge and information regarding the allegations of paragraph 99 of the Complaint, and on that basis denies them.

100.    Bereday admits that WellCare denied that the Company engaged in illegal marketing practices. Bereday denies the remaining allegations in paragraph 100 of the Complaint.

101.    Bereday admits that WellCare received a letter from CMS. Bereday admits that on May 6, 2007, *The New York Times* published an article that discussed, in part, WellCare. Bereday admits that the allegations of paragraph 101 of the Complaint contain partially accurate quotes from the May 6 *New York Times* article. Bereday admits that there were meetings between CMS and representatives of WellCare. Bereday denies the remaining allegations of paragraph 101 of the Complaint.

102.    Bereday admits that WellCare held an earnings conference call on May 8, 2007. Bereday admits that the allegations of paragraph 102 of the Complaint quote language from a transcript of WellCare's May 8 earnings conference call. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 102 of the Complaint, and on that basis denies them.

103.    Bereday admits that on May 16, 2007, the United States Senates Special Committee on Aging held a hearing. Bereday admits that Gary Bailey was Vice President of Medicare Operational Performance. Bereday admits that Mr. Bailey testified at the May 16 Senate Committee hearing. Bereday admits that the allegations of paragraph 103 of the

Complaint quote language from the May 16 hearing transcript. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 103 of the Complaint, and on that basis denies them.

104. Bereday admits that on June 15, 2007, the Centers for Medicare & Medicaid Services ("CMS") issued a press release that discussed, in part, WellCare. Bereday admits that on June 26, 2007, Gary Bailey provided testimony before the United States House of Representatives Committee on Energy & Commerce Subcommittee on Oversight & Investigations Hearing on Medicare Advantage Sales Practices. Bereday admits that the allegations of paragraph 104 quote language from the June 26 Subcommittee hearing. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 104 of the Complaint, and on that basis denies them.

105. Bereday admits that CMS asserted alleged violations of Medicare contracts by certain of WellCare's subsidiaries. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 105 of the Complaint, and on that basis denies them.

106. Bereday admits that federal and state agents executed a search warrant on WellCare's Tampa headquarters on October 24, 2007. Bereday lacks knowledge and information regarding the allegations of paragraph 106 of the Complaint, and on that basis denies them.

107. Bereday lacks knowledge and information regarding the allegations of paragraph 107 of the Complaint, and on that basis denies them.

108. Bereday admits there was a search warrant and items were seized. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 108 of the Complaint, and on that basis denies them.

109.     Bereday admits that the allegations of paragraph 109 of the Complaint quote statements attributed to John Gorman.  Bereday admits that Wachovia Capital Markets, LLC ("Wachovia") issued a note on WellCare on October 25, 2007.  Bereday admits that the allegations of paragraph 109 quote language from the October 25 Wachovia note.  Bereday lacks knowledge and information regarding the remaining allegations of paragraph 109 of the Complaint, and on that basis denies them.

110.     Bereday admits that WellCare's closing stock price was approximately $122.27 on October 23, 2007.  Bereday admits that WellCare's closing stock price was approximately $42.67 on October 25, 2007.  Bereday admits that from October 23, 2007 to October 245, 2007, WellCare's market capitalization was reduced by approximately $3 billion.  Bereday lacks knowledge and information regarding the remaining allegations of paragraph 110 of the Complaint, and on that basis denies them.

111.     Bereday admits that Wachovia issued a note on WellCare on October 25, 2007. Bereday admits that the allegations of paragraph 111 quote language from the October 25 Wachovia note.  Bereday admits that that the *St. Petersburg Times* published an article on October 25, 2007 that discussed WellCare.  Bereday admits that the allegations of paragraph 111 of the Complaint quote language from the October 25 *St. Petersburg Times* article.  Bereday admits that *The Tampa Tribune* published an article on October 25, 2007 that discussed WellCare.  Bereday admits that the allegations of paragraph 111 of the Complaint quote language from the October 25 *Tampa Tribune* article.  Bereday admits that *The Wall Street Journal* published an article on November 3, 2007 that discussed WellCare.  Bereday admits that the allegations of paragraph 111 of the Complaint quote language from the November 3 *Wall*

3797535_3.DOC

*Street Journal* article.  Bereday lacks knowledge and information regarding the remaining allegations of paragraph 111 of the Complaint, and on that basis denies them.

112.    Bereday admits that the Connecticut Attorney General's Office issued a press release on October 26, 2007 that discussed, in part, WellCare.  Bereday admits that the allegations of paragraph 112 of the Complaint quote language from the Connecticut Attorney General's October 26 press release.  Bereday lacks knowledge and information regarding the remaining allegations of paragraph 112 of the Complaint, and on that basis denies them.

113.    Bereday admits that the federal government has served subpoenas on WellCare. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 113 of the Complaint, and on that basis denies them.

114.    Bereday admits that Gregory West is a former employee of a WellCare subsidiary.  Bereday admits that on December 21, 2007, Mr. West pleaded guilty to a charge brought by the U.S. Attorney for the Middle District of Florida.  Bereday admits that Mr. West was a Finance Manager.  Bereday admits that the allegations of paragraph 114 of the Complaint include quotes from Mr. West's plea agreement.  Bereday lacks knowledge and information regarding the allegation that former employees have identified Mr. West's supervisors, and on that basis denies it.  Bereday admits that Peter Clay was Vice President of Medical Economics. Bereday denies the remaining allegations of paragraph 114 of the Complaint.

115.    Bereday admits that the allegations of paragraph 115 of the Complaint include quotes from Mr. West's plea agreement.  Bereday denies the remaining allegations of paragraph 115 of the Complaint.

116.    Bereday admits that WellCare held an earnings conference call on November 2, 2005.  Bereday admits that the allegations of paragraph 116 of the Complaint include quotes

3797535_3.DOC

from a transcript of WellCare's November 2 earnings conference call. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 116 of the Complaint, and on that basis denies them.

117.    Bereday admits that there was a hearing at which Mr. West pleaded guilty. Bereday admits that the allegations of paragraph 117 of the Complaint include quotes from the transcript of Mr. West's plea hearing. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 117 of the Complaint, and on that basis denies them.

118.    Bereday admits that after federal and state agents executed a search warrant on WellCare's Tampa headquarters, WellCare's Board of Directors formed a special committee. Bereday admits that WellCare filed a Form 8-K with the SEC on July 21, 2008. Bereday admits that WellCare determined that certain financial statements would be restated. Bereday denies the remaining allegations of paragraph 118 of the Complaint.

119.    Bereday admits that the allegations of paragraph 119 quote language from WellCare's July 21 8-K. Bereday admits that in its July 21 8-K, WellCare indicated that it owed approximately $46.5 million to the States of Florida and Illinois under certain contracts. Bereday denies the remaining allegations of paragraph 119 of the Complaint.

120.    Bereday admits that in its July 21 8-K, WellCare stated that, as a result of the restatement, the Company would reduce net income and diluted earnings per share for the years ended December 31, 2004, 2005, and 2006 and the six months ended June 30, 2007 by approximately 14%, 9%, 9%, and 5%, respectively. Bereday admits that WellCare's July 21 8-K stated the Special Committee's review was ongoing. Bereday admits that WellCare's July 21 8-K stated that the Company intended to present restated consolidated financial statements in its

3797535_3.DOC

2007 Form 10-K, but that the Company was unable to estimate the timing for filing its 2007 Form 10-K. Bereday denies the remaining allegations of paragraph 120 of the Complaint.

121.    Bereday denies the allegations in paragraph 121 of the Complaint.

122.    Bereday admits that on January 25, 2008, WellCare issued a press release that announced, among other things, that the Special Committee had provided WellCare's Board of Directors a preliminary report with recommendations. Bereday admits that the January 25 press release announced, among other things, that Messrs. Farha, Behrens and Bereday had resigned from WellCare. Bereday admits that the allegations of paragraph 122 of the Complaint contain quotes from the January 25 press release. Bereday denies the remaining allegations of paragraph 122 of the Complaint.

123.    Bereday admits that the terms of Farha, Behrens and Bereday's resignations are included in filings that WellCare made with the SEC. Bereday lacks knowledge and information regarding the allegation in paragraph 123 of the Complaint concerning Farha and Behrens' compensation and/or any equity awards, and on that basis denies them. Bereday denies the remaining allegations of paragraph 123 of the Complaint.

124.    Bereday denies the allegations in paragraph 124 of the Complaint.

125.    Bereday lacks knowledge and information regarding the remaining allegations of paragraph 125 of the Complaint, and on that basis denies them.

126.    Bereday admits that the allegations of paragraph 126 contain quotes from the July 21 8-K. Bereday denies the remaining allegations of paragraph 126 of the Complaint.

127.    Bereday admits that the allegations of paragraph 127 of the Complaint contain quotes from WellCare's July 21 8-K. Bereday denies the remaining allegations of paragraph 127 of the Complaint.

128.    Bereday admits that the allegations of paragraph 128 of the Complaint quote language from WellCare's July 21 8-K.  Bereday lacks knowledge and information regarding the remaining allegations of paragraph 128 of the Complaint, and on that basis denies them.

129.    Bereday lacks knowledge and information regarding the allegations of paragraph 129 of the Complaint, and on that basis denies them.

130.    Bereday denies the allegations of fraud.  Bereday lacks knowledge and information regarding the remaining allegations of paragraph 130 of the Complaint, and on that basis denies them.

131.    Bereday admits that WellCare's July 21 8-K disclosed that certain material weaknesses existed at the Company.  Bereday denies the remaining allegations of paragraph 131 of the Complaint.

132.    Bereday denies the allegations in paragraph 132 of the Complaint.

133.    Bereday denies the allegations in paragraph 133 of the Complaint.

134.    Bereday denies the allegations in paragraph 134 of the Complaint.

135.    Bereday admits that WellCare issued a press release on February 14, 2005 regarding its financial results for the fourth quarter and year-ended December 31, 2004.  Bereday admits that the allegations of paragraph 135 quote language from the February 14 press release. Bereday denies the remaining allegations of paragraph 135 of the Complaint.

136.    Bereday admits that WellCare filed a Form 10-K with the SEC on February 15, 2005, which reported on WellCare's 2004 financial results (the "2004 Form 10-K").  Bereday admits that Messrs. Farha and Behrens' signatures appear on WellCare's 2004 Form 10-K and the SOX certifications filed with the 2004 Form 10-K.  Bereday admits that the allegations of

paragraph 136 of the Complaint quote language from the SOX certifications filed with WellCare's 2004 Form 10-K.

137.    Bereday denies the allegations in paragraph 137 of the Complaint.

138.    Bereday admits that the allegations of paragraph 138 of the Complaint contain quotes from WellCare's 2004 Form 10-K.  Bereday admits that WellCare filed a Form 10-K/A with the SEC on June 22, 2005.  Bereday denies the remaining allegations of paragraph 138 of the Complaint.

139.    Bereday admits that the allegations of paragraph 139 of the Complaint contain quotes from WellCare's July 21 8-K.  Bereday denies the remaining allegations of paragraph 139 of the Complaint.

140.    Bereday admits that the allegations of paragraph 140 of the Complaint contain quotes from WellCare's 2004 Form 10-K.  Bereday denies the remaining allegations of paragraph 140 of the Complaint.

141.    Bereday admits that the allegations of paragraph 141 of the Complaint contain partially accurate quotes that appeared in a version of the Trust Program that appeared on WellCare's website.  Bereday lacks knowledge and information regarding the remaining allegations of paragraph 141 of the Complaint, and on that basis denies them.

142.    Bereday denies the allegations in paragraph 142 of the Complaint.

143.    Bereday admits that Credit Suisse issued a report on February 15, 2005 that discussed WellCare.  Bereday admits that the allegations of paragraph 143 of the Complaint contain quotes from the February 15 Credit Suisse report.  Bereday admits that Wachovia issued a report on February 14, 2005 that discussed WellCare.  Bereday admits that the allegations of

paragraph 143 of the Complaint contain quotes from the February 14 Wachovia report. Bereday denies the remaining allegations of paragraph 143 of the Complaint.

144.    Bereday admits that WellCare issued a press release on May 9, 2005. Bereday admits that the allegations of paragraph 144 of the Complaint quote language from the May 9 press release. Bereday denies the remaining allegations of paragraph 144 of the Complaint.

145.    Bereday admits that WellCare filed a Form 10-Q with the SEC on May 10, 2005 (the "1Q 2005 10-Q"). Bereday admits that Mr. Behrens' signature appears on the 1Q 2005 10-Q. Bereday admits that the signatures of Messrs. Farha and Behrens appear on the SOX certifications filed with the 1Q 2005 10-Q.

146.    Bereday denies the allegations in paragraph 146 of the Complaint.

147.    Bereday admits that WellCare's 1Q 2005 10-Q submission included language similar to what is quoted in paragraph 138 of the Complaint. Bereday denies the remaining allegations of paragraph 147 of the Complaint.

148.    Bereday admits that Credit Suisse issued a report on WellCare on May 9, 2005. Bereday admits that the allegations of paragraph 148 of the Complaint quote language from the May 9 Credit Suisse report. Bereday admits that Wachovia issued a report on WellCare on May 9, 2005. Bereday admits that the allegations of paragraph 148 of the Complaint quote language from the May 9 Wachovia report. Bereday admits that on May 9, 2005, WellCare's closing stock price was approximately $31.72 per share. Bereday admits that on May 10, 2005, WellCare's closing stock price was approximately $33.40 per share. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 148 of the Complaint, and on that basis denies them.

149.    Bereday admits that WellCare issued a press release on August 3, 2005 regarding its financial results for the second quarter of 2005. Bereday admits that the allegations of paragraph 149 of the Complaint quote language from the August 3 press release. Bereday denies the remaining allegations of the paragraph 149 of the Complaint.

150.    Bereday admits that WellCare filed a Form 10-Q with the SEC on August 4, 2005 (the "2Q 2005 10-Q"). Bereday admits that Mr. Behrens' signature appears on the 2Q 2005 10-Q. Bereday admits that the signatures of Messrs. Farha and Behrens appear on the SOX certifications filed with the 2Q 2005 10-Q.

151.    Bereday denies the allegations in paragraph 151 of the Complaint.

152.    Bereday admits that WellCare's 2Q 2005 10-Q submission included language similar to what is quoted in paragraph 138 of the Complaint. Bereday denies the remaining allegations of paragraph 152 of the Complaint.

153.    Bereday admits that CIBC issued a report on WellCare on August 4, 2005. Bereday admits that the allegations of paragraph 153 of the Complaint quote language from the August 4 CIBC report. Bereday admits that Credit Suisse issued a report on WellCare on August 4, 2005. Bereday admits that the allegations of paragraph 153 of the Complaint quote language from the August 4 Credit Suisse report. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 153 of the Complaint, and on that basis denies them.

154.    Bereday admits that WellCare issued a press release on November 1, 2005 regarding its financial results for the third quarter of 2005. Bereday admits that the allegations of paragraph 154 of the Complaint quote language from the November 1 press release. Bereday denies the remaining allegations of the paragraph 154 of the Complaint.

3797535_3.DOC

155.    Bereday admits that WellCare filed a Form 10-Q with the SEC on November 2, 2005 (the "3Q 2005 10-Q"). Bereday admits that Mr. Behrens' signature appears on the 3Q 2005 10-Q. Bereday admits that the signatures of Messrs. Farha and Behrens appear on the SOX certifications filed with the 3Q 2005 10-Q.

156.    Bereday denies the allegations in paragraph 156 of the Complaint.

157.    Bereday admits that WellCare's 3Q 2005 10-Q submission included language similar to what is quoted in paragraph 138. Bereday denies the remaining allegations of paragraph 157 of the Complaint.

158.    Bereday admits that Credit Suisse issued a report on WellCare on November 1, 2005. Bereday admits that the allegations of paragraph 158 of the Complaint quote language from the November 1 Credit Suisse report. Bereday admits that CIBC issued a report on WellCare on November 1, 2005. Bereday admits that the allegations of paragraph 158 of the Complaint quote language from the November 1 CIBC report. Bereday admits that Legg Mason issued a report on WellCare on November 2, 2005. Bereday admits that the allegations of paragraph 158 of the Complaint quote language from the November 2 Legg Mason report. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 158 of the Complaint, and on that basis denies them.

159.    Bereday admits that WellCare issued a press release on February 13, 2006 regarding its financial results for the fourth quarter and year ended 2005. Bereday admits that the allegations of paragraph 159 of the Complaint quote language from the February 13 press release.

160.    Bereday admits that WellCare filed a Form 10-K with the SEC on February 14, 2006 (the "2005 Form 10-K"). Bereday admits that the signatures of Messrs. Farha and Behrens

appear on the 2005 Form 10-K. Bereday admits that the signatures of Messrs. Farha and Behrens appear on the SOX certifications filed with the 2005 Form 10-K.

161.    Bereday denies the allegations in paragraph 161 of the Complaint.

162.    Bereday admits that WellCare's 2005 Form 10-K submission included language similar to what is quoted in paragraph 138 of the Complaint. Bereday denies the remaining allegations of paragraph 162 of the Complaint.

163.    Bereday admits that the allegations of paragraph 163 of the Complaint refer to paragraph 140 of the Complaint, which quotes language that appeared in WellCare's 2005 Form 10-K. Bereday admits that the allegations of paragraph 163 of the Complaint refer to paragraph 141 of the Complaint. Bereday lacks knowledge and information regarding the allegations of paragraph 141 of the Complaint, and on that basis denies them. Bereday denies the remaining allegations of paragraph 163 of the Complaint.

164.    Bereday admits that CIBC issued a report on WellCare on February 14, 2006. Bereday admits that the allegations of paragraph 164 of the Complaint quote language from the February 14 CIBC report. Bereday admits that on February 13, 2006, WellCare's opening stock price was approximately $39.01 per share. Bereday admits that on February 14, 2006, WellCare's closing stock price was approximately $41.50 per share. Bereday admits that CIBC issued a report on WellCare on February 13, 2006. Bereday admits that the allegations of paragraph 164 of the Complaint quote language from the February 13 CIBC report. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 164 of the Complaint, and on that basis denies them.

165.    Bereday admits that WellCare's net income for 2005, as reported in the Company's 2005 Form 10-K, was approximately $51,928,000. Bereday admits that WellCare's

net income for 2006, as reported in the Company's 2006 Form 10-K filed with the SEC on

February 16, 2007 (the "2006 Form 10-K"), was approximately $139,187,000. Bereday admits

that the allegations of paragraph 165 of the Complaint quote, in part, language from a WellCare

press release regarding the Company's 2006 financial results. Bereday admits that the

allegations of paragraph 165 of the Complaint quote, in part, language from a WellCare press

release regarding the Company's first quarter 2006 financial results. Bereday denies the

remaining allegations of paragraph 165 of the Complaint.

166.    Bereday admits that WellCare issued a press release on May 8, 2006 regarding the

Company's financial results for the first quarter of 2006. Bereday admits that the allegations of

paragraph 166 of the Complaint quote language from WellCare's May 8 press release.

167.    Bereday admits that WellCare filed a Form 10-Q with the SEC on May 9, 2006

(the "1Q 2006 10-Q"). Bereday admits that Mr. Behrens' signature appears on the 1Q 2006 10-

Q. Bereday admits that the signatures of Messrs. Farha and Behrens appear on the SOX

certifications filed with the 1Q 2006 10-Q.

168.    Bereday denies the allegations in paragraph 168 of the Complaint.

169.    Bereday admits that WellCare's 1Q 2006 10-Q submission included language

similar to what is quoted in paragraph 138 of the Complaint. Bereday denies the remaining

allegations of paragraph 169 of the Complaint.

170.    Bereday admits that CIBC issued a report on WellCare on May 8, 2006. Bereday

admits that the allegations of paragraph 170 of the Complaint quote language from the May 8

CIBC report. Bereday admits that on May 8, 2006, WellCare's opening stock price was

approximately $41.05 per share. Bereday admits that on May 10, 2006, WellCare's closing

stock price was approximately $45.38 per share. Bereday lacks knowledge and information

regarding the remaining allegations of paragraph 170 of the Complaint, and on that basis denies them.

171.     Bereday admits that WellCare issued a press release on August 2, 2006 regarding the Company's financial results for the second quarter of 2006. Bereday admits that the allegations of paragraph 171 of the Complaint quote language from WellCare's August 2 press release. Bereday denies the remaining allegations of paragraph 171 of the Complaint.

172.     Bereday admits that WellCare filed a Form 10-Q with the SEC on August 4, 2006 (the "2Q 2006 10-Q"). Bereday admits that Mr. Behrens' signature appears on the 2Q 2006 10-Q. Bereday admits that the signatures of Messrs. Farha and Behrens appear on the SOX certifications filed with the 2Q 2006 10-Q.

173.     Bereday denies the allegations in paragraph 173 of the Complaint.

174.     Bereday admits that WellCare's 2Q 2006 10-Q submission included language similar to what is quoted in paragraph 138 of the Complaint. Bereday denies the remaining allegations of paragraph 174 of the Complaint.

175.     Bereday admits that CIBC issued a report on WellCare on August 2, 2006. Bereday admits that the allegations of paragraph 175 of the Complaint quote language from the August 2 CIBC report. Bereday admits that on August 1, 2006, WellCare's closing stock price was approximately $50.36 per share. Bereday admits that on August 3, 2006, WellCare's closing stock price was approximately $51.45 per share. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 175 of the Complaint, and on that basis denies them.

176.     Bereday admits that WellCare issued a press release on November 1, 2006 regarding the Company's financial results for the third quarter of 2006. Bereday admits that the

3797535_3.DOC

allegations of paragraph 176 of the Complaint quote language from the November 1 press release. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 176 of the Complaint, and on that basis denies them.

177.    Bereday admits that WellCare filed a Form 10-Q with the SEC on November 3, 2006 (the "3Q 2006 10-Q"). Bereday admits that Mr. Behrens' signature appears on the 3Q 2006 10-Q. Bereday admits that the signatures of Messrs. Farha and Behrens appear on the SOX certifications filed with the 3Q 2006 10-Q.

178.    Bereday denies the allegations in paragraph 178 of the Complaint.

179.    Bereday admits that WellCare's 3Q 2006 10-Q submission included language similar to what is quoted in paragraph 138 of the Complaint. Bereday denies the remaining allegations of paragraph 179 of the Complaint.

180.    Bereday admits that WellCare held an earnings conference call on November 2, 2006. Bereday admits that the allegations of paragraph 180 of the Complaint quote language from a transcript of WellCare's November 2 earnings conference call. Bereday denies the remaining allegations of paragraph 180 of the Complaint.

181.    Bereday denies the allegations in paragraph 181 of the Complaint.

182.    Bereday admits that CIBC issued a report on WellCare on November 1, 2006. Bereday admits that the allegations of paragraph 182 of the Complaint quote language from the November 1 CIBC report. Bereday admits that on October 31, 2006, WellCare's closing stock price was approximately $57.04 per share. Bereday admits that on November 2, 2006, WellCare's closing stock price was approximately $61.39 per share. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 182 of the Complaint, and on that basis denies them.

3797535_3.DOC

183.    Bereday admits that WellCare issued a press release on February 13, 2007 regarding financial results for the fourth quarter and year ended December 31, 2006. Bereday admits that the allegations of paragraph 183 of the Complaint quote language from the February 13 press release. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 183 of the Complaint, and on that basis denies them.

184.    Bereday denies that WellCare filed a Form 10-K with the SEC on February 14, 2007. Bereday avers that WellCare filed a Form 10-K with the SEC on February 16, 2007 (the "2006 Form 10-K"). Bereday admits that the signatures of Messrs. Behrens and Farha appear on the 2006 Form 10-K. Bereday admits that the signatures of Messrs. Farha and Behrens appear on the SOX certifications filed with the 2006 Form 10-K.

185.    Bereday denies the allegations in paragraph 185 of the Complaint.

186.    Bereday admits that WellCare's 2006 Form 10-K submission included language similar to that quoted in paragraph 138. Bereday denies the remaining allegations of paragraph 186 of the Complaint.

187.    Bereday admits that WellCare's 2006 Form 10-K contained statements regarding the Company's Trust Program, similar to statements alleged in paragraph 140 of the Complaint. Bereday denies the remaining allegations of paragraph 187 of the Complaint.

188.    Bereday admits that CIBC issued a report on WellCare on February 14, 2007. Bereday admits that the allegations of paragraph 188 of the Complaint quote language from the February 14 CIBC report. Bereday admits that on February 12, 2007, WellCare's closing stock price was approximately $76.50 per share. Bereday admits that on February 15, 2007, WellCare's closing stock price was approximately $79.70 per share. Bereday lacks knowledge

3797535_3.DOC

and information regarding the remaining allegations of paragraph 188 of the Complaint, and on that basis denies them.

189.    Bereday admits that in the spring of 2007, certain analysts raised questions regarding WellCare's medical loss ratio. Bereday admits that in a WellCare earnings conference call on May 8, 2007, Farha and Behrens addressed analysts' questions regarding the Company's medical loss ratio. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 189 of the Complaint, and on that basis denies them.

190.    Bereday admits that on April 11, 2007, *The Tampa Tribune* published an article that discussed, in part, WellCare. Bereday admits that the allegations of paragraph 190 of the Complaint quote language that appeared in the April 11 *Tampa Tribune* article. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 190 of the Complaint, and on that basis denies them.

191.    Bereday admits that on April 27, 2007, *The Tampa Tribune* published an article that discussed, in part, WellCare. Bereday admits that the allegations of paragraph 191 of the Complaint quote language that appeared in the April 27 *Tampa Tribune* article. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 191 of the Complaint, and on that basis denies them.

192.    Bereday denies the allegations of paragraph 192 of the Complaint.

193.    Bereday admits that on April 24, 2007, WellCare's closing stock price was approximately $93.44 per share. Bereday admits that on April 27, 2007, WellCare's closing stock price was approximately $86.50 per share. Bereday admits that WellCare issued a press release on April 30, 2007. Bereday admits that the allegations of paragraph 193 of the Complaint quote language from WellCare's April 30 press release. Bereday denies that, in the

April 30 press release, Mr. Farha stated that the Company would upwardly revise its full-year guidance on May 7, 2007. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 193 of the Complaint, and on that basis denies them.

194.   Bereday admits that WellCare issued a press release on May 7, 2007. Bereday admits that in the May 7 press release, WellCare increased its full-year 2007 earnings per share guidance to $4.65 to $4.75. Bereday admits that the allegations of paragraph 194 of the Complaint quote language from WellCare's May 7 press release. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 194 of the Complaint, and on that basis denies them.

195.   Bereday admits that WellCare filed a Form 10-Q with the SEC on May 9, 2007 (the "1Q 2007 10-Q"). Bereday admits that Mr. Behrens' signature appears on the 1Q 2007 10-Q. Bereday admits that the signatures of Messrs. Farha and Behrens appear on the SOX certifications filed with the 1Q 2007 10-Q.

196.   Bereday denies the allegations in paragraph 196 of the Complaint.

197.   Bereday admits that WellCare's 1Q 2007 10-Q submission included language similar to what is quoted in paragraph 138 of the Complaint. Bereday denies the remaining allegations of paragraph 197 of the Complaint.

198.   Bereday admits that WellCare held an earnings conference call on May 8, 2007. Bereday admits that Messrs. Farha and Behrens participated in WellCare's May 8 earnings conference call. Bereday denies the remaining allegations of paragraph 198 of the Complaint.

199.   Bereday admits that the allegations of paragraph 199 of the Complaint contain partially accurate statements that appear in a transcript of WellCare's May 8, 2007 earnings

3797535_3.DOC

conference call. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 199 of the Complaint, and on that basis denies them.

200.    Bereday admits that the allegations of paragraph 200 of the Complaint contain statements that appear in a transcript of WellCare's May 8, 2007 earnings conference call. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 200 of the Complaint, and on that basis denies them.

201.    Bereday admits that the allegations of paragraph 201 of the Complaint quote language from WellCare's July 21 8-K. Bereday denies the remaining allegations in paragraph 201 of the Complaint.

202.    Bereday admits that *The New York Times* published an article on May 6, 2007 that discussed, in part, WellCare. Bereday admits that the allegations of paragraph 202 of the Complaint quote part of a statement attributed to Leslie V. Norwalk, which appeared in the May 6 *New York Times* article. Bereday denies the remaining allegations of paragraph 202 of the Complaint.

203.    Bereday admits that the allegations of paragraph 203 of the Complaint include statements that appear in a transcript of WellCare's May 8, 2007 earnings conference call. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 203 of the Complaint, and on that basis denies them.

204.    Bereday admits that CMS issued a press release on June 15, 2007 that discussed, in part, WellCare. Bereday admits that the allegations of paragraph 204 of the Complaint quote language from the June 15 CMS press release. Bereday denies the remaining allegations in paragraph 204 of the Complaint.

3797535_3.DOC

205.    Bereday admits that CIBC issued a report on WellCare on May 1, 2007.  Bereday admits that the allegations of paragraph 205 of the Complaint quote language from the May 1 CIBC report.  Bereday admits that Stifel Nicolaus issued a report on WellCare on May 8, 2007.  Bereday admits that the allegations of paragraph 205 of the Complaint quote language from the May 8 Stifel Nicolaus report.  Bereday admits that CIBC issued a report on WellCare on May 7, 2007.  Bereday admits that the allegations of paragraph 205 of the Complaint quote language from the May 7 CIBC report.  Bereday admits that on May 7, 2007, WellCare's opening stock price was approximately $82.08 per share.  Bereday admits that on May 8, 2007, WellCare's closing stock price was approximately $90.16 per share.  Bereday lacks knowledge and information regarding the remaining allegations of paragraph 205 of the Complaint, and on that basis denies them.

206.    Bereday admits that on May 16, 2007, Gary Bailey provided a written statement to the United States Senate's Special Committee on Aging.  Bereday admits that the allegations of paragraph 206 of the Complaint quote language from Mr. Bailey's written statement.  Bereday admits that in the summer of 2007, the United States House of Representatives' Committee on Energy & Commerce, Subcommittee on Oversight & Investigations, held a hearing on Medicare Advantage Sales Practices.  Bereday denies the remaining allegations of paragraph 206 of the Complaint.

207.    Bereday admits that CMS issued a press release on June 15, 2007 that discussed, in part, WellCare.  Bereday admits that the allegations of paragraph 207 of the Complaint quote language from the June 15 CMS pres release.  Bereday denies the remaining allegations in paragraph 207 of the Complaint.

208.    Bereday admits that on May 20, 2007, the *Hartford Courant* published an article

that discussed, in part, WellCare.  Bereday admits that the allegations of paragraph 208 of the

Complaint quote language that appeared in the May 20 *Hartford Courant* article.  Bereday lacks

knowledge and information regarding the remaining allegations of paragraph 208 of the

Complaint, and on that basis denies them.

209.    Bereday admits that federal and state agents executed a search warrant on

WellCare's Tampa headquarters on October 24, 2007.  Bereday admits that Gregory West

entered a guilty plea with respect to a charge brought by the U.S. Attorney for the Middle

District of Florida.  Bereday admits that the allegations of paragraph 209 of the Complaint quote

language that appeared in WellCare's July 21 8-K.  Bereday denies the remaining allegations of

paragraph 209 of the Complaint.

210.    Bereday admits that CMS issued a press release on June 15, 2007 that discussed,

in part, WellCare.  Bereday admits that the allegations of paragraph 204 of the Complaint quote

language from the June 15 CMS pres release.  Bereday admits that on June 26, 2007, Mr. Bailey

provided a statement in connection with a Hearing on Medicare Advantage Sales Practices

before the U.S. House of Representatives' Committee on Energy & Commerce, Subcommittee

on Oversight & Investigations. Bereday admits that the allegations of paragraph 210 of the

complaint reference allegations contained in paragraph 206 of the Complaint.  Bereday admits

that the allegations of paragraph 206 of the contain language that appears in Mr. Bailey's June 26

statement.  Bereday denies the remaining allegations in paragraph 207 of the Complaint.

211.    Bereday lacks knowledge and information regarding the allegations of paragraph

211 of the Complaint, and on that basis denies them.

212.    Bereday admits that WellCare issued a press release on August 2, 2007.  Bereday admits that the allegations of paragraph 212 of the Complaint quote language from WellCare's August 2 press release.  Bereday admits that in its August 2 press release, WellCare updated its full-year 2007 guidance regarding, among other things, diluted earnings per share.  Bereday lacks knowledge and information regarding the remaining allegations of paragraph 212 of the Complaint, and on that basis denies them.

213.    Bereday admits that WellCare filed a Form 10-Q with the SEC on August 3, 2007 (the "2Q 2007 10-Q").  Bereday admits that Mr. Behrens' signature appears on the 2Q 2007 10-Q.  Bereday admits that the signatures of Messrs. Farha and Behrens appear on the SOX certifications filed with the 2Q 2007 10-Q.

214.    Bereday denies the allegations in paragraph 214 of the Complaint.

215.    Bereday admits that WellCare's 2Q 2007 10-Q submission included language similar to what is quoted in paragraph 138 of the Complaint.  Bereday denies the remaining allegations of paragraph 215 of the Complaint.

216.    Bereday admits that Credit Suisse issued a report on WellCare on August 2, 2007.  Bereday admits that the allegations of paragraph 216 of the Complaint quote language from the August 2 Credit Suisse report.  Bereday denies that on August 1, 2007, WellCare's closing stock price was approximately $100.84 per share.  Bereday admits that on August 2, 2007, WellCare's closing stock price was approximately $106.80 per share.  Bereday lacks knowledge and information regarding the remaining allegations of paragraph 216 of the Complaint, and on that basis denies them.

217.    Bereday admits that on October 23, 2007, WellCare's closing stock price was approximately $122.27 per share.  Bereday admits that federal and state agents executed a search

3797535_3.DOC

warrant on WellCare's Tampa headquarters on October 24, 2007. Bereday denies the remaining allegations of paragraph 217 of the Complaint.

218.    Bereday admits that on October 23, 2007, WellCare's closing stock price was approximately $122.27 per share. Bereday admits that the New York Stock Exchange halted trading on October 24, 2007. Bereday admits that on October 2, 2007, WellCare's closing stock price was approximately $42.67 per share. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 218 of the Complaint, and on that basis denies them.

219.    Bereday denies the allegations of paragraph 219 of the Complaint.

220.    Bereday admits that there are investigations by the U.S. Attorney's Office for the Middle District of Florida and the SEC. Bereday lacks knowledge and information regarding the allegation in paragraph 220 of the Complaint concerning WellCare's stock price, and on that basis denies it. Bereday denies the remaining allegations of paragraph 220 of the Complaint.

221.    Bereday admits that WellCare's remaining Forms 10-K and 10-Q issued during the alleged Class Period stated that they were prepared in accordance with GAAP. Bereday admits that WellCare's July 21 8-K stated that the restatement of certain of its consolidated financial statements related to accounting errors. Bereday denies the remaining allegations of paragraph 221 of the Complaint.

222.    Bereday admits that WellCare's July 21 8-K stated that the restatement of certain of its consolidated financial statements related to accounting errors. Bereday admits that WellCare filed its July 21 8-K on July 21, 2008, before Mr. West's plea agreement became public. Bereday lacks knowledge and information regarding the allegations of paragraph 222 of the Complaint concerning accounting literature, and on that basis denies them. Bereday denies the remaining allegations of paragraph 222 of the Complaint.

223.    Bereday lacks knowledge and information regarding the allegations of paragraph 223 of the Complaint, and on that basis denies them.

224.    Bereday admits that WellCare's July 21 8-K stated that WellCare owed additional refunds to the States of Illinois and Florida of up to approximately $42 million and $4.5 million, respectively.  Bereday lacks knowledge and information regarding the remaining allegations of paragraph 224 of the Complaint, and on that basis denies them.

225.    Bereday lacks knowledge and information regarding the allegations of paragraph 225 of the Complaint, and on that basis denies them.

226.    Bereday lacks knowledge and information regarding the allegations of paragraph 226 of the Complaint, and on that basis denies them.

227.    Bereday admits that the allegations of paragraph 227 of the Complaint quote language from WellCare's July 21 8-K.  Bereday denies the remaining allegations of paragraph 227 of the Complaint.

228.    Bereday admits that WellCare's July 21 8-K stated that, as a result of the restatement, the Company would reduce premium revenues for the years ended December 31, 2004, 2005, and 2006 and the six months ended June 30, 2007 by approximately $11 million, $8 million, $20 million, and $7 million, respectively.  Bereday denies the remaining allegations of paragraph 228 of the Complaint.

229.    Bereday admits that WellCare's July 21 8-K stated that, as a result of the restatement, the Company would reduce net income and diluted earnings per share for the years ended December 31, 2004, 2005, and 2006 and the six months ended June 30, 2007 by approximately 14%, 9%, 9%, and 5%, respectively.  Bereday denies the remaining allegations of paragraph 229 of the Complaint.

230.     Bereday admits that the allegations of paragraph 230 of the Complaint quote language from WellCare's July 21 8-K.  Bereday lacks knowledge and information regarding the remaining allegations of paragraph 230 of the Complaint, and on that basis denies them.

231.     Bereday lacks knowledge and information regarding the allegations of paragraph 231 of the Complaint, and on that basis denies them.

232.     Bereday admits that WellCare's July 21 8-K stated that, as a result of the restatement, the Company would reduce net income and diluted earnings per share for the years ended December 31, 2004, 2005, and 2006 and the six months ended June 30, 2007 by approximately 14%, 9%, 9%, and 5%, respectively.  Bereday denies the remaining allegations of paragraph 232 of the Complaint.

233.     Bereday lacks knowledge and information regarding the allegations of paragraph 233 of the Complaint, and on that basis denies them.

234.     Bereday lacks knowledge and information regarding the allegations of paragraph 234 of the Complaint, and on that basis denies them.

235.     Bereday lacks knowledge and information regarding the allegations of paragraph 235 of the Complaint, and on that basis denies them.

236.     Bereday denies the allegations of paragraph 236 of the Complaint.

237.     Bereday denies the allegations of paragraph 237 of the Complaint.

238.     Bereday denies the allegations of paragraph 238 of the Complaint.

239.     Bereday denies the allegations in paragraph 239 of the Complaint.

240.     Bereday admits that Mr. West entered a guilty plea that is discussed in paragraphs 114-17 of the Complaint.  Bereday denies the remaining allegations of paragraph 240 of the Complaint.

241.    Bereday admits that the allegations of paragraph 241 of the Complaint quote language from Mr. West's December 21, 2007 plea agreement. Bereday denies the remaining allegations of paragraph 241 of the Complaint.

242.    Bereday denies the allegations of paragraph 242 of the Complaint.

243.    Bereday denies the allegations of paragraph 243 of the Complaint.

244.    Bereday denies the allegations of paragraph 244 of the Complaint.

245.    Bereday denies the allegations of paragraph 245 of the Complaint.

246.    Bereday admits that he sold shares of WellCare common stock during the alleged Class Period. Bereday denies the remaining allegations of paragraph 246 of the Complaint.

247.    Bereday lacks knowledge and information regarding the allegations of paragraph 247 of the Complaint, and on that basis denies them.

248.    Bereday lacks knowledge and information regarding the allegations of paragraph 248 of the Complaint, and on that basis denies them.

249.    Bereday admits that during the Class Period, he sold stock in WellCare. Bereday admits that the chart in paragraph 249 purports to list Bereday's stock trades in WellCare, which are a matter of public record. Bereday denies the remaining allegations of paragraph 249 of the Complaint.

250.    Bereday admits that WellCare filed its 2Q 2006 Form 10-Q with the SEC on August 4, 2006. Bereday admits that WellCare's closing stock price was approximately $50.36 per share on August 1, 2006. Bereday admits that WellCare's closing stock price was approximately $51.49 per share on August 11, 2006. Bereday denies the remaining allegations of paragraph 250 of the Complaint.

251.    Bereday admits that WellCare filed its 3Q 2006 Form 10-Q with the SEC on November 3, 2006. Bereday admits that WellCare's closing stock price was approximately $58.75 per share on October 31, 2006. Bereday admits that WellCare's closing stock price was approximately $62.35 per share on November 15, 2006. Bereday denies the remaining allegations of paragraph 251 of the Complaint.

252.    Bereday admits that WellCare announced its fourth quarter and year-end 2006 financial results on February 13, 2007. Bereday admits that Mr. Farha used the word "transformative" in a WellCare press release. Bereday admits that WellCare's closing stock price was approximately $58.75 per share on February 12, 2007. Bereday admits that WellCare's closing stock price was approximately $81 per share on February 21, 2007. Bereday denies the remaining allegations of paragraph 252 of the Complaint.

253.    Bereday admits that WellCare's closing stock price was approximately $80.59 per share on April 30, 2007. Bereday admits that WellCare's closing stock price was approximately $89.95 per share on May 10, 2007. Bereday denies the remaining allegations of paragraph 253 of the Complaint.

254.    Bereday admits that on December 22, 2004, he sold 20,000 shares of WellCare common stock for gross proceeds of approximately $608,000. Bereday lacks knowledge and information regarding paragraph 254's allegations concerning stock sales of Defendants Farha and Behrens, and on that basis denies them. Bereday denies the remaining allegations of paragraph 254 of the Complaint.

255.    Bereday denies the allegations of paragraph 255 of the Complaint.

256.    Bereday admits that certain stock trades were made pursuant to trading plans. Bereday admits that trading plans were approved. Bereday admits that the allegations of

3797535_3.DOC

paragraph 256 contain a quote from WellCare's 2007 Form Def 14A (the "2007 Proxy") regarding trading plans. Bereday denies the remaining allegations of paragraph 256 of the Complaint.

257.    Bereday admits that *The St. Petersburg Times* published an article on October 26, 2007. Bereday admits that the allegations of paragraph 257 of the Complaint quote language from the October 26 *St. Petersburg Times* article. Bereday denies the remaining allegations of paragraph 257 of the Complaint.

258.    Bereday admits that the SEC's Director, Division of Enforcement presented a speech on March 8, 2007. Bereday admits that the allegations of paragraph 258 of the Complaint quote language from a transcript of the Director's March 8 speech. Bereday denies the remaining allegations of paragraph 258 of the Complaint.

259.    Bereday admits that certain stock sales were not made pursuant to trading plans. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 259 of the Complaint, and on that basis denies them.

260.    Bereday admits that Farha sold 219,000 shares in a July 6, 2005 secondary offering, in which WellCare sold no shares. Bereday admits that Farha sold 193,000 shares in a March 13, 2006 secondary offering. Bereday denies the remaining allegations of paragraph 260 of the Complaint.

261.    Bereday admits that Behrens sold 64,000 shares in a July 6, 2005 secondary offering, and 49,000 shares in a March 13, 2006 secondary offering. Bereday lacks knowledge and information regarding the remaining allegations of paragraph 261 of the Complaint, and on that basis denies them.

3797535_3.DOC

262.    Bereday admits that his stock sales on March 15, 2005, July 6, 2005, March 13, 2006, March 15, 2006, April 6, 2006, March 13, 2007, and March 1, 2007 were not made pursuant to trading plans.  Bereday admits that he sold 48,000 shares of WellCare common stock in WellCare's July 6, 2005 secondary offering and 35,000 shares of WellCare common stock in WellCare's March 13, 2006 secondary offering.  Bereday denies the remaining allegations of paragraph 262 of the Complaint.

263.    Bereday admits that WellCare's 2007 Proxy discussed, among other things, the Company's process for setting compensation.  Bereday denies the remaining allegations of paragraph 263 of the Complaint.

264.    Bereday admits that his fiscal year 2006 salary was $256,462, and his fiscal year 2006 cash bonus was $150,000.  Bereday admits that his fiscal year 2006 restricted stock award was 2,339 shares, and that his fiscal year stock option award was 9,394 options.  Bereday admits that Farha and Behrens' fiscal year 2006 compensation, including salary, bonus and stock awards, was reported in WellCare's 2007 Proxy.  Bereday denies the remaining allegations of paragraph 264 of the Complaint.

265.    Bereday admits that on June 6, 2005, Farha received a Performance Share Award entitling him to up to 240,279 shares.  Bereday lacks knowledge and information regarding the remaining allegations of paragraph 265 of the Complaint, and on that basis denies them.

266.    Bereday admits that the allegations of paragraph 266 of the Complaint quote language from WellCare's 2007 Proxy.  Bereday admits that on March 13, 2006, Farha received 100,000 options, Behrens received 9,584 shares of restricted stock, and Bereday received 4,792 shares of restricted stock.

3797535_3.DOC

267.    Bereday admits that the allegations of paragraph 267 of the Complaint quote language from WellCare's 2007 Proxy. Bereday admits that on July 27, 2006, Behrens received 20,141 stock options, and Bereday received 12,588 stock options.

268.    Bereday admits that WellCare's closing stock price was approximately $122.00 per share on October 23, 2007. Bereday denies the remaining allegations in paragraph 268 of the Complaint.

269.    Bereday admits that federal and state agents executed a search warrant on WellCare's Tampa headquarters on October 24, 2007. Bereday admits that WellCare's closing stock price was approximately $122 per share on October 23, 2007. Bereday admits that WellCare's closing stock price was approximately $42.67 per share on October 25, 2007. Bereday denies the remaining allegations in paragraph 269 of the Complaint.

270.    Bereday lacks knowledge and information regarding the allegations of paragraph 270 of the Complaint concerning the Standard & Poor's 500 securities index, and on that basis denies them. Bereday denies the remaining allegations in paragraph 270 of the Complaint.

271.    Bereday admits that WellCare's common stock was listed on the New York Stock Exchange ("NYSE"). Bereday admits that WellCare filed periodic public reports with the SEC. Bereday admits that from time to time, WellCare issued press releases. Bereday admits that from time to time, various securities analysts issued reports that discussed WellCare. Bereday denies the remaining allegations of paragraph 271 of the Complaint.

272.    Bereday denies the allegations in paragraph 272 of the Complaint.

273.    Bereday denies the allegations in paragraph 273 of the Complaint.

274.    Bereday denies the allegations in paragraph 274 of the Complaint.

275.    Bereday denies the allegations in paragraph 275 of the Complaint.

276.    Bereday denies the allegations in paragraph 276 of the Complaint.

277.    Bereday denies the allegations in paragraph 277 of the Complaint.

278.    Bereday incorporates by reference all preceding paragraphs as though fully set forth herein.

279.    Bereday admits that Lead Plaintiffs purport to bring their First Claim, for violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, against WellCare and Messrs. Farha and Behrens.

280.    Bereday denies the allegations in paragraph 280 of the Complaint.

281.    Bereday denies the allegations in paragraph 281 of the Complaint.

282.    Bereday denies the allegations in paragraph 282 of the Complaint.

283.    Bereday denies the allegations in paragraph 283 of the Complaint.

284.    Bereday denies the allegations in paragraph 284 of the Complaint.

285.    Bereday denies the allegations in paragraph 285 of the Complaint.

286.    Bereday denies the allegations in paragraph 286 of the Complaint.

287.    Bereday denies the allegations in paragraph 287 of the Complaint.

288.    Bereday denies the allegations in paragraph 288 of the Complaint.

289.    Bereday denies the allegations in paragraph 289 of the Complaint.

290.    Bereday incorporates by reference all preceding paragraphs as though fully set forth herein.

291.    Bereday admits that Lead Plaintiffs purport to bring their Second Claim, for violations of Section 20(a) of the Exchange Act, against Messrs. Farha, Behrens and Bereday.

292.    Bereday denies the allegations in paragraph 292 of the Complaint.

293.    Bereday denies the allegations in paragraph 293 of the Complaint.

294.    Bereday denies the allegations in paragraph 294 of the Complaint.

295.    Bereday denies the allegations in paragraph 295 of the Complaint.

296.    Bereday incorporates by reference all preceding paragraphs as though fully set forth herein.

297.    Bereday admits that Lead Plaintiffs purport to bring their Third Claim, for violations of Section 20A of the Exchange Act, against Messrs. Farha, Behrens and Bereday.

298.    Bereday denies the allegations in paragraph 298 of the Complaint.

299.    Bereday admits that on July 6, 2005, he sold 48,000 shares of WellCare common stock for gross proceeds of approximately $1.6 million.  Bereday admits that on May 24, 2007, he sold 5,129 shares of WellCare common stock for gross proceeds of approximately $469,788.  Bereday admits that on August 15, 2007, he sold 8,040 shares of WellCare common stock for gross proceeds of approximately $764,783.  Bereday admits that on August 24, 2007, he sold 8,040 shares of WellCare common stock for net proceeds of approximately $802,354.  Bereday denies the remaining allegations of paragraph 299 of the Complaint.

300.    Bereday denies the allegations in paragraph 300 of the Complaint.

301.    Bereday denies the allegations in paragraph 301 of the Complaint.

302.    Bereday denies the allegations in paragraph 302 of the Complaint.

303.    Bereday denies the allegations in paragraph 303 of the Complaint.

WHEREFORE, Mr. Bereday prays that the Court enter judgment as follows:

1.    That judgment be entered in favor of Mr. Bereday;

2.    That Lead Plaintiffs take nothing from Mr. Bereday by this Consolidated Amended Complaint for Violation of the Federal Securities Laws, and that the same be dismissed with prejudice;

3797535_3.DOC

3.      For costs, attorneys' fees, expert witness fees and court hearing costs incurred

herein; and

4.      For such other relief as the Court deems just and proper.

Dated:  November 30, 2009          By:    s/s Keith E. Eggleton
                                          Keith E. Eggleton, *Appearing Pro Hac Vice*
                                          Dale R. Bish, *Appearing Pro Hac Vice*
                                          WILSON SONSINI GOODRICH & ROSATI
                                          Professional Corporation
                                          650 Page Mill Road
                                          Palo Alto, CA 94304-1050
                                          Telephone:  (650) 493-9300
                                          Facsimile:  (650) 565-5100

                                          Attorneys for Defendant
                                          THADDEUS BEREDAY

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send an electronic notice to all counsel of record who are registered to receive electronic notices. I further certify that I mailed the foregoing document and the notice of electronic filing by first class mail to the following non-CM/ECF participants:  NONE.

 s/s Keith E. Eggleton
Keith E. Eggleton
Attorney