UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**EASTWOOD ENTERPRISES, LLC, et al.,**

    **Plaintiffs,**

v.                                           Case No.: 8:07-CV-1940-T-33EAJ

**TODD S. FARHA, et al.,**

    **Defendants.**

_____/

## ORDER

Before the court are **Motions to Modify and/or Quash** filed by non-parties Psychcare, LLC ("Psychcare") (Dkt. 169), Vista Healthplan of South Florida, Inc. and Vista Healthplan, Inc. (collectively "Vista") (Dkt. 172), Preferred Medical Plan, Inc. ("Preferred") (Dkt. 173), and Citrus Health Care, Inc. ("Citrus") (Dkt. 174)[1] and a **Memorandum in Opposition** filed by Defendant Thaddeus Bereday ("Bereday") (Dkt. 182).

## Background

In their amended class action complaint, Plaintiffs bring a securities fraud claim under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 (Dkt. 96 at 9). Plaintiffs allege that Defendant WellCare Health Plans, Inc. ("WellCare"), a managed health care company, misappropriated Medicaid funds in order to artificially inflate its publicly reported income and its stock price (Id. at 2). Plaintiffs further submit that Todd Farha, WellCare's Chief Executive Officer, Paul Behrens, WellCare's Chief Financial Officer, and Bereday, WellCare's General Counsel and Chief

---

[1] Because Citrus filed an amended motion to quash (Dkt. 174), its initial motion to quash (Dkt. 167) is now moot.

Compliance Officer, collectively sold approximately 1.47 million shares of WellCare stock at an artificially inflated price for proceeds of approximately $90.25 million (Id. at 4-5).

WellCare allegedly retained unspent Medicaid premiums as profits despite a legal obligation to return these premiums to the states with which it contracted (Id. at 3). Plaintiffs submit that this was accomplished in two steps (Id.). First, WellCare transferred the premiums to a wholly-owned subsidiary in the Cayman Islands as sham purchases of reinsurance (Id.). Second, WellCare designated these purchases as direct medical costs in filings with state regulators (Id.).

In October 2007, more than 200 federal and state law enforcement agents executed a federal search warrant at WellCare's headquarters (Id. at 39). The agents seized laptop computers and enough documents to fill a moving truck (Id. at 40). The raid caused WellCare's stock price to drop $80 per share, approximately two-third of its value, and resulted in an immediate halt of trading of WellCare shares (Id. at 41). In December 2007, a WellCare Finance Manager pled guilty in federal court to conspiring to commit Medicare fraud (Id. at 43). The following month, Farha, Behrens, and Bereday resigned their positions with WellCare "without good reason" (Id. at 46).

Plaintiffs maintain that Defendants' actions violated a Florida statute governing the state's cost-effective purchasing of health care (Id. at 20). See Fla. Stat. § 409.912(4)(b) (2009) ("the 80/20 Statute"). The 80/20 Statute authorizes Florida's Medicaid agency, the Agency for Health Care Administration ("AHCA"), to contract with managed care plans for the provision of comprehensive behavioral health care services, defined as "covered mental health and substance abuse treatment services," to certain Medicaid recipients. Id. A contract between AHCA and a managed care plan must require that 80 percent of the "capitation" paid to the plan be expended on the provision of behavioral health care services. Id. If the plan spends less than 80 percent of the capitation on

behavioral health care services, it must return the difference to AHCA. Id.

## Analysis

At issue are subpoenas (Dkt. 183 Exs. 1-5) that Bereday issued to Vista, Preferred, and Citrus, non-party health maintenance organizations (collectively "the HMOs"), and Psychcare, a non-party behavioral health care organization ("BHO"). The HMOs and Psychcare ask that the subpoenas be modified or quashed or, alternatively, that the court enter protective orders relieving them from any obligation to respond to the subpoenas.

**I.    The HMOs' Subpoenas**

While there are slight variances in the subpoenas issued to the HMOs, each generally seeks documents reflecting contracts or communications between the recipient and AHCA or a specified BHO and documents indicating the manner in which the recipient interpreted the 80/20 Statute. The subpoenas served on Vista and Preferred seek the following documents:

Request 1:   All contracts between the recipient and a specified BHO;[2]

Request 2:   All submissions to AHCA relating to certain provisions of the 80/20 Statute and copies of any reimbursement or refund checks relating to such submissions;

Request 3:   All correspondence with AHCA relating to the 80/20 Statute;

Request 4:   Documents indicating, by calendar year, the amounts paid to the specified BHO;

Request 5:   Documents "sufficient to show" the methodology used in calculating the behavioral health care ratio submitted to AHCA;[3]

---

[2] Psychcare is the specified BHO in Preferred's and Vista's subpoenas. Comprehensive Behavioral Healthcare, Inc. is the specified BHO in Citrus's subpoena.

[3] During the parties' "meet and confer," Bereday agreed to narrow Request 5 to "documents sufficient to show" how the behavioral health care ratio was calculated.

Request 6: Documents relating to any audit of the recipient's submissions to AHCA pursuant to the 80/20 Statute;

Request 7: All submissions to AHCA of behavioral health encounter data and documents between the recipient and AHCA relating to such submissions;

Request 8: All documents relating to premiums received from AHCA for behavioral or mental health services, including calculation of such premiums or any analysis or comparison of the capitation reported by AHCA with the recipient's calculation of the capitation; and

Request 9: All documents relating to any negotiations, contracts, or correspondence with any BHO aside from the specified BHO.

The Citrus subpoena seeks the above documents as well as documents relating to any analysis of whether to include pharmacy expenses in 80/20 Statute submissions to AHCA.[4]

The HMOs maintain that the subpoenas 1) seek irrelevant information; 2) are overbroad; 3) seek privileged or confidential materials; 4) subject the recipient to an undue burden; 5) seek information that should be obtained directly from AHCA; and 6) seek information that the HMOs are prohibited by federal law from disclosing.

   a.   **Relevance**

To prevail on their Rule 10b-5 claim, Plaintiffs must establish "(1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on a misstatement or omission; (5) economic loss; and (6) a causal connection

---

[4] Requests 1-9 correspond to the numbering in Preferred's and Vista's subpoenas. Requests 1-5 correspond to the numbering in Citrus's subpoena, however, the sixth request in that subpoena seeks documents related to pharmacy expenses. The seventh, eighth, ninth, and tenth requests in Citrus's subpoena correspond to Requests 6-9 as listed above.

between the material misrepresentation or omission and the loss, commonly called 'loss causation.'" Instituto De Prevision Militar v. Merrill Lynch, 546 F.3d 1340, 1352 (11th Cir. 2008). "[S]cienter consists of intent to defraud or severe recklessness on the part of the defendant." Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc., 594 F.3d 783, 790 (11th Cir. 2010) (citation and internal quotation marks omitted).

Whether WellCare's 80/20 Statute reports included a material misrepresentation or omission reflecting an intent to defraud or severe recklessness is directly at issue in this matter. Bereday contends that the requested documents may demonstrate that WellCare's interpretation of the 80/20 Statute was reasonable, thus defeating any claim that Defendants acted with the requisite scienter. He asserts that, like WellCare, other health care plans interpreted the 80/20 Statute differently than AHCA. Bereday emphasizes that the HMOs' 2006 80/20 Statute reports initially provided for no refunds to AHCA but, following an AHCA-directed audit by a third-party, were each later amended to refund hundreds of thousands of dollars.

The interpretation of the Statute by other health care plans bears on the reasonableness of Defendants' interpretation. The documents sought in Requests 2-3 and 5-8 reflect the manner in which the HMOs complied with the 80/20 Statute and those sought in Requests 1, 4, and 9 are relevant as to whether and to what extent the HMOs included BHO expenses when calculating AHCA refunds. Documents showing whether Citrus contemplated including pharmacy expenses in its calculations are relevant as to Citrus's interpretation of the 80/20 Statute. Because the requested documents demonstrate how the HMOs interpreted the 80/20 Statute, they are relevant as to the reasonableness of Defendants' interpretation.

### b. **Overbreadth**

The HMOs maintain that the subpoenas are overbroad because they cover a period of nine years or longer.[5]

The amended complaint defines the "Class Period," during which Plaintiffs purchased WellCare's common stock, as February 14, 2005 through October 25, 2007 (Dkt. 96 at 1). Bereday has not demonstrated that nine years of documents are necessary to address claims covering a Class Period of less than three years. Nonetheless, given that some of the documents at issue may be generated on an annual basis, such as the HMOs' 80/20 Statute reports to AHCA, the subpoena period need not exactly match the Class Period. The subpoenas to the HMOs are thus modified to cover the period from January 1, 2004 to December 31, 2007.

### c. **Confidentiality or Privilege**

Absent exception or waiver, a court must quash or modify a subpoena that requires disclosure of privileged or other protected matter. Fed. R. Civ. P. 45(c)(3)(A)(iii). A court may quash or modify a subpoena if it requires disclosure of a trade secret or other confidential research, development, or commercial information. Fed. R. Civ. P. 45(c)(3)(B)(i). Alternatively, a court may require disclosure of trade secrets or other confidential information under specified conditions if the serving party 1) shows a substantial need for the information that cannot otherwise be met without undue hardship and 2) ensures that the recipient will be reasonably compensated. Fed. R. Civ. P. 45(c)(3)(C). It is the movant's burden to establish that a subpoena requires the disclosure of

---

[5] Vista and Preferred maintain that their subpoenas seek documents from a period covering more than nine years. Citrus asserts that its subpoena covers an unlimited time period.

privileged or protected information. Fadalla v. Life Auto. Prods., 258 F.R.D. 501, 504 (M.D. Fla. 2007).

Preferred's Chief Financial Officer, Albert Arca ("Arca"), avers that Requests 1, 4-7, and 9 require the disclosure of privileged and confidential materials, including, but not limited to, proprietary business information, trade secrets, and documents protected from production by the work-product doctrine and attorney-client privilege (Dkt. 184 Ex. 1).[6] Vista makes the same assertion in its motion without the support of an affidavit (Dkt. 173 at 2). Citrus's President and Chief Executive Officer, Bruce Carpenter ("Carpenter"), raises identical concerns in regard to Requests 1-10 (Dkt. 193). These conclusory statements, however, are insufficient to justify quashing or modifying the subpoenas or entering a protective order. See U & I Corp. v. Advanced Med. Design, Inc., 251 F.R.D. 667, 673 (M.D. Fla. 2008) (citing United States v. Garrett, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)); Estate of Manship v. United States, 240 F.R.D. 700, 702 (N.D. Ga. 2006).

In its motion, Citrus expands upon the assertions set forth in Carpenter's affidavit, maintaining that it has a reasonable expectation of privacy regarding its business transactions with other entities (Dkt. 174 at 7). Citrus further reasons that its methods of complying with the 80/20 Statute, developed after significant time and expense, "are what keep [it] competitive and profitable in a challenging industry" and that it would "go against the free market principles of our capitalistic

---

[6] In his response to the motions to quash, Bereday points out that neither the HMOs nor Psychcare submitted affidavits supporting their motions. Preferred, Citrus, and Psychcare subsequently filed affidavits of corporate representatives (Dkts. 184 Ex. 1, 187, 192).

society" to require it to disclose its methods to a rival (Id. at 7-8).

Whether or not Citrus's business transactions or methods of calculating behavioral health care expenses are truly trade secrets or other confidential research, development, or commercial information, Bereday has demonstrated a substantial need for the information that cannot be otherwise met without undue hardship. See Rule 45(c)(3)(C)(i), Fed. R. Civ. P. Nonetheless, the information need only be disclosed to Bereday's counsel and other litigation personnel at this time.[7] No Defendant shall use the information for any purpose other than the defense of this litigation. Because these limitations protect the HMOs from any loss in the commercial value of this information, there is no need to condition the disclosure upon the payment of reasonable compensation. See Klay v. All Defendants, 425 F.3d 977, 985-86 (11th Cir. 2005) (finding reasonable compensation for disclosure of trade secrets unnecessary where court limited disclosure to attorneys and restricted use of information).

### d. Undue Burden

A court must quash or modify a subpoena that subjects a person to an undue burden. Fed. R. Civ. P. 45(c)(3)(A)(iv). It is the movant's burden to establish that compliance with a subpoena would result in an undue burden. Fadalla, 258 F.R.D. at 504. "Claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome." Bank of Mongolia v. M&P Global Fin. Servs., 258 F.R.D. 514, 519

---

[7] Although Preferred and Vista do not specifically refer to their business transactions and methods of calculating behavioral health care expenses, this limitation extends to their subpoenas as well given they are similarly situated to Citrus.

(S.D. Fla. 2009).

Citrus contends that its subpoena should be quashed or modified because Citrus is not a party to this suit, has no interest in its outcome, and would suffer burdens from disclosure without any benefit. Citrus maintains that it could even expose itself to liability depending on how Bereday uses any produced information and raises concerns over Bereday's status as the subject of a shareholder lawsuit and federal fraud allegations. Bereday responds that Citrus is unquestionably interested in the outcome of this suit and that such interest is reflected by Citrus's concerns regarding future liability.

In deciding whether to quash or modify a subpoena, "[t]he status of a person as a non-party is a factor that weighs against disclosure." Fadalla, 258 F.R.D. at 504 (citation omitted). Non-party status, however, is but one of several factors the court must consider, such as "the relevance of the requests, the breadth of the request[s], the time period covered by the requests, and the particularity with which the documents are described." Id. (citation omitted). Although Citrus's non-party status warrants consideration in assessing Citrus's entitlement to relief, it is not dispositive of the issue.

Preferred and Vista submit that the thirty-day compliance deadline set forth in the subpoenas is insufficient. Arca avers that Preferred will need sixty days to search, identify, and gather any documents responsive to Requests 2-9. Vista, by motion rather than affidavit, asserts that it will need ninety days to do the same (Dkt. 172 at 4). These time estimates, however, are conclusory and unsupported by any explanation as to how these figures were reached. It is not apparent why searching, identifying, and gathering documents responsive to Requests 2-9 would require sixty to ninety days for compliance, especially given that some of the requests may seek documents

9

generated annually. Furthermore, there is no suggestion as to why Vista requires thirty more days for compliance than Preferred. Based on the evidence presently before the court, an extension of the production deadline is not justified.

As for the breadth of the requests or the particularity with which the requested documents are described, Arca avers that Requests 2-9 subject Preferred to an undue burden because responding would require "extensive manpower" (Dkt. 184 Ex. 1). Arca maintains that the individuals necessary to gather responsive materials will need to be taken out of their regularly scheduled business responsibilities, creating a hardship for Preferred (Id.) Vista makes identical assertions in its motion but without a supporting affidavit. Carpenter raises similar concerns as to Citrus's subpoena without reference to any specific requests (Dkt. 193).

Vista's assertions carry little weight given they are not supported by affidavits or any other evidence. Although Preferred and Citrus raise their concerns by affidavit, their claims of undue burden are conclusory. It is not obvious that any of the requests would require the production of a substantial number of documents and none of the HMOs attempts to quantify the number of documents at issue or explain why the documents at issue are not identified with sufficient particularity. Given the HMOs' failure to adequately demonstrate that compliance with the subpoenas would be unduly burdensome, there is no need to quash or further modify the subpoenas or enter a protective order.

### f. Alternate Source

Vista and Preferred contend that any requested documents they submitted to AHCA should be obtained directly from AHCA under Florida's "Sunshine Law." See Fla. Stat. § 119.01 et seq.

Similarly, Citrus states that some of the requested information is on file with various departments and agencies and could be obtained via a proper public information request. Carpenter submits that it would be "far more expeditious" for Citrus's subpoena to be directed toward AHCA (Dkt. 193).

A court must limit the frequency or extent of discovery otherwise allowed if the discovery can be obtained from some other source that is more convenient, less burdensome, or less expensive. Rule 26(b)(2)(C), Fed. R. Civ. P. Bereday, however, maintains that AHCA would not have many of the requested documents and that he has been unable to obtain requested documents in AHCA's possession despite repeated attempts to do so for two years. The HMOs have not countered this assertion with evidence indicating that it would be more convenient, less burdensome, or less expensive for Bereday to obtain the requested information from AHCA. Accordingly, it appears that there is no alternate source from which Bereday can reasonably obtain this information.

    **g.**    **Privacy Laws**

Citrus asserts that disclosure of some of the requested documents is specifically prohibited by the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d et seq., because the documents contain patient information. See 45 C.F.R. § 164.502 (restricting disclosure of protected health information).

Bereday indicates that he would be willing to narrow his requests to the extent that HIPAA compliance would be unduly burdensome. Pursuant to Local Rule 3.01(g), the parties shall confer and attempt to resolve any HIPAA issues among themselves. Any unresolved HIPAA issues may be raised by separate motion.

**II.**    **Psychcare's Subpoena**

The subpoena served on Psychcare seeks the following documents:

Request 1:   All documents relating to WellCare;

Request 2:   All contracts between Psychcare and HMOs or other managed care providers in Florida, including Preferred and Vista;

Request 3:   Documents reflecting, by calendar year, payments received from contracting HMOs;

Request 4:   Documents indicating, by calendar year, the amounts paid for behavioral health care providers on behalf of contracting HMOs;

Request 5:   Documents showing, by calendar year, the expenses incurred in providing behavioral health services;

Request 6:   Documents reflecting, by calendar year, the profit earned and administrative expenses incurred in providing behavioral health services; and

Request 7:   Documents related to the 80/20 Statute including any correspondence with AHCA or any contracting HMO.

In his affidavit, Psychcare's President and Chief Executive Officer, Rodolfo Hernandez, M.D., asserts that 1) Requests 1-7 require the disclosure of confidential information including, but not limited to, proprietary business information, trade secrets, and documents protected from production by the work-product doctrine and attorney-client privilege; 2) the subpoena subjects Psychcare to an undue burden as it will take "extensive manpower" to search, identify, and gather documents responsive to the requests and cause employees to be removed from their regular duties; and 3) the documents should be obtained from AHCA rather than Psychcare. In its motion, Psychcare submits that the subpoena is overbroad because it is "limitless in time and practically limitless in documents sought" (Dkt. 169 at 2). Further, Psychcare asserts a reasonable expectation

of privacy in its business transactions with other entities and contends that it has spent significant time and funds developing its methods of complying with the 80/20 Statute, disclosure of which would result in an "unfair business advantage to Bereday" (Id. at 3).

For the reasons discussed in the analysis of the HMOs' subpoenas, Psychcare's contentions do not justify quashing its subpoena or entering a protective order. Like the HMOs' subpoenas, Psychcare's subpoena should be modified to cover the period from January 1, 2004 through December 31, 2007. Moreover, documents reflecting Psychcare's business transactions or methods of calculating behavioral health care expenses shall be disclosed only to Bereday's counsel and other litigation personnel at this time; no Defendant shall use the information for any purpose other than the defense of this litigation. No other relief sought by Psychcare is justified at this time.

## **Conclusion**

The HMOs and Psychcare have demonstrated that Bereday's subpoenas seek documents covering an excessive period of time. The subpoenas are modified to cover the period from January 1, 2004 through December 31, 2007. Documents reflecting business transactions or methods of calculating behavioral health care expenses shall be disclosed only to Bereday's counsel and other litigation personnel at this time; no Defendant shall use the information for any purpose other than the defense of this litigation.[8] No other relief is appropriate at this time.

---

[8] Plaintiff Public Pension Funds served a subpoena for similar documents on Citrus but has agreed to limit its subpoena to those documents sought in Bereday's subpoena and to accept and abide by any rulings made by this court with respect to Bereday's subpoena (Dkt. 198 Ex. A). Documents reflecting Citrus's business transactions or methods of calculating behavioral health care expenses shall additionally be disclosed to counsel for Plaintiff Public Pension Funds with the same restrictions covering Bereday's subpoena.

Accordingly, and upon consideration, it is **ORDERED and ADJUDGED** that:

(1) Citrus's Motion to Quash Subpoena *Duces Tecum* (Dkt. 167) is **DENIED AS MOOT**;

(2) The Motions to Modify and/or Quash (Dkts. 169, 172, 173, 174) filed by Psychcare, Vista, Preferred, and Citrus are **GRANTED IN PART AND DENIED IN PART**;

(3) The subpoenas at issue in the motions are modified to cover the period from January 1, 2004 through December 31, 2007. Documents reflecting business transactions or methods of complying with the 80/20 Statute shall be disclosed only to counsel and other litigation personnel as set forth above and pursuant to a joint stipulation for protective order to be filed within ten (10) days which complies with In re Alexander Grant & Co. Litig., 820 F.2d 352, 355 (11th Cir. 1987), aff'g 629 F. Supp 593, 597 (S.D. Fla. 1986), and Local Rule 1.09, M.D. Fla.;

(4) Documents responsive to the subpoenas shall be produced within thirty (30) days of the date of this order; and

(5) All other relief sought in the motions is denied.

**DONE** and **ORDERED** in Tampa, Florida on this 26th day of April, 2010.

_____
ELIZABETH A JENKINS
United States Magistrate Judge