**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | | |
|---|---|---|
| EASTWOOD ENTERPRISES, LLC | : | |
| Individually and on Behalf of All Others | : | Case No.: 8:07-cv-1940-VMC- |
| Similarly Situated, | : | EAJ |
| | : | |
| Plaintiffs, | : | |
| vs. | : | |
| | : | |
| TODD S. FARHA, PAUL L. BEHRENS, | : | |
| THADDEUS BEREDAY, and | : | |
| WELLCARE HEALTH PLANS, INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND
INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
Steven B. Singer
Jeremy P. Robinson
Laura H. Gundersheim
John Rizio-Hamilton
1285 Avenue of the Americas
New York, New York 10019
Tel: (212) 554-1400
Fax: (212) 554-1444

*Counsel for Teachers' Retirement System of
Louisiana, Public School Teachers' Pension &
Retirement Fund of Chicago, and Policemen's
Annuity and Benefit Fund of Chicago, and
Court-appointed Lead Counsel for the Class*

**LABATON SUCHAROW LLP**
Thomas A. Dubbs
James W. Johnson
Michael Stocker
Michael Woolley
140 Broadway
New York, New York 10005
Tel: (212) 907-0700
Fax: (212) 818-0477

*Counsel for the New Mexico State
Investment Council and the Public
Employees Retirement Association of
New Mexico, and Court-appointed
Lead Counsel for the Class*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

I.   PRELIMINARY STATEMENT ................................................................2

II.  CLASS ACTION ALLEGATIONS ..........................................................3

III. STATEMENT OF FACTS ........................................................................5

    A.   Summary of the Complaint ..............................................................5

    B.   The Proposed Class Representatives .................................................7

IV.  ARGUMENT .............................................................................................8

    A.   Lead Plaintiffs Have Standing .........................................................9

    B.   The Requirements of Rule 23(a) Are Satisfied ................................9

        1.   The Members of the Class Are So Numerous That Joinder of All Members Is Impracticable ..........................................10

        2.   Questions of Law and Fact Are Common to the Class ..............11

        3.   Lead Plaintiffs' Claims Are Typical of Those of the Class ......13

        4.   Lead Plaintiffs Will Fairly and Adequately Protect the Interests of the Class .....................................................................14

    C.   The Requirements of Rule 23(b) Are Satisfied ..............................17

        1.   Common Questions of Law and Fact Predominate....................18

        2.   A Class Action Is Superior To Other Available Methods For the Fair and Efficient Adjudication of This Controversy...............................22

    D.   The Court Should Appoint Co-Lead Counsel For Lead Plaintiffs As Class Counsel Under Rule 23(g) ................................................24

V.   CONCLUSION........................................................................................25

## TABLE OF AUTHORITIES

### CASES

*In re Alexander Grant & Co. Litig.*,
    110 F.R.D. 528 (S.D. Fla. 1986) ....................................................................18, 19

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ...............................................................................................18

*In re Amerifirst Sec. Litig.*,
    139 F.R.D. 423 (S.D. Fla. 1991) ...............................................................8, 14, 20

*Avery v. Uniroyal Tech. Corp.*,
    No. 8:02 CV 2238T27MAP, 2005 WL 1205607 (M.D. Fla. May 20, 2005) ....................11, 12

*Basic, Inc. v. Levinson*,
    485 U.S. 224 (1988) ...............................................................................................19

*Blue Chip Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975) .................................................................................................9

*Busby v. JRHBW Realty,* Inc.,
    513 F.3d 1314 (11th Cir. 2008) ..............................................................................14

*Cammer v. Bloom*,
    711 F. Supp. 1264 (D.N.J. 1989) .......................................................................4, 20

*Cheney v. Cyberguard Corp.*,
    213 F.R.D. 484 (S.D. Fla. 2003) ................................................................. *passim*

*Cooper v. Pacific Life Ins. Co.*,
    229 F.R.D. 245 (S.D. Ga. 2005) ............................................................................22

*Cox v. American Cast Iron Pipe Co.*,
    784 F.2d 1546 (11th Cir. 1986) ........................................................................10, 11

*In re Daou Sys.*,
    411 F.3d 1006 (9th Cir. 2005) ................................................................................22

*Dolgow v. Anderson*,
    43 F.R.D. 472 (E.D.N.Y. 1968) .............................................................................24

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005) .........................................................................................21, 22

*Esplin v. Hirschi*,
    402 F.2d 94 (10th Cir. 1968) ...................................................................................8

*Freeland v. Iridium World Commcn's Ltd.*,
    233 F.R.D. 40 (D.D.C. 2006) ........................................................................21

*In re Frontier Ins. Group Sec. Litig.*,
    172 F.R.D. 31 (S.D.N.Y. 1997) ...............................................................19, 20

*In re HealthSouth Corp. Sec. Litig.*,
    213 F.R.D. 447 (N.D. Ala. 2003) ......................................................10, 13, 19

*In re HealthSouth Corp. Sec. Litig.*,
    257 F.R.D. 260 (N.D. Ala. 2009) ................................................................21

*In re HealthSouth Corp. Sec. Litig.*,
    261 F.R.D. 616 (N.D. Ala. 2009) ................................................................10

*Jackson v. Motel 6 Multipurpose, Inc.*,
    130 F.3d 999 (11th Cir. 1997) ...................................................................17

*Kennedy v. Tallant*,
    710 F.2d 711 (11th Cir. 1983) .................................................................8, 14

*Kirkpatrick v. J.C. Bradford & Co.*,
    827 F.2d 718 (11th Cir. 1987) ............................................................9, 14, 24

*Klay v. Humana, Inc.*,
    382 F.3d 1241 (11th Cir. 2004) ..........................................................9, 18, 19

*Kornberg v. Carnival Cruise Lines, Inc.*,
    741 F.2d 1332 (11th Cir. 1984) ..................................................................13

*Lagrasta v. First Union Sec. Inc.*,
    No. 01-CV-251, 2005 WL 1875469 (M.D. Fla. Aug. 8, 2005) ................................22

*Lapin v. Goldman Sachs & Co.*,
    254 F.R.D. 168 (S.D.N.Y. 2008) ................................................................21

*In re LDK Solar  Sec. Litig.*
    255 F.R.D. 519 (N.D. Cal. 2009) ................................................................21

*Lipton v. Documation Inc.*
    734 F.2d 740 (11th Cir. 1984) ...................................................................24

*In re Miva, Inc. Sec. Litig.*,
    No. 2-05-cv-201-FtM 29DNF, 2008 WL 681755 (M.D. Fla. Mar. 12, 2008) ..................19

*In re NetBank Inc.*,
    259 F.R.D. 656 (N.D. Ga. 2009) ................................................................21

*In re Nortel Networks Corp. Sec. Litig.*,
  No. 01 Civ. 1855 (RMB), 2003 WL 22077464 (S.D.N.Y. Sept. 8, 2003)...............................19

*In re NTL Inc. Sec. Litig.*,
  No. 02 Civ. 3013, 2006 WL 330113 (S.D.N.Y. Feb. 14, 2006) ................................................24

*Odmark v. Mesa Ltd. P'ship*,
  No. 3:91-CV-2376-X, 1992 WL 035211 (N.D. Tex. June 5, 1992) ........................................12

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ...............................................................................................................23

*In re Piedmont Office Trust, Inc. Sec. Litig.*,
  No. 1:07-CV-2660-CAP, 2010 WL 1030667 (N.D. Ga. Mar. 10, 2010) ..............................17

*Rosario-Guerrro v. Orange Blossom Harvesting*,
  No. 2:09-cv-106-FtM-29DNF, 2010 WL 672808 (M.D. Fla. Feb. 23, 2010) ........................13

*In re Scientific-Atlanta, Inc. Sec. Litig.*,
  571 F. Supp. 2d 1315 (N.D. Ga. 2007) ..................................................................................17

*Sala v. National R.R. Passenger Corp.*,
  120 F.R.D. 494 (E.D. Pa. 1988) .............................................................................................13

*Sher v. Raytheon Co.*,
  261 F.R.D. 651 (M.D. Fla. 2009) ...................................................................................... *passim*

*Strube v. American  Equity Inv. Life Ins. Co.*,
  226 F.R.D. 688 (M.D. Fla. 2005) ...........................................................................................11

*Tapken v. Brown*,
  No. 90-691,1992 WL 178984 (S.D. Fla. Mar. 13, 1992)......................................10, 11, 14, 19

*Walco Invs. Inc. v. Thenen*,
  168 F.R.D. 315 (S.D. Fla. 1996) .....................................................................................10, 11, 23

*Zeidman v. McDermott & Co.*,
  651 F.2d 1030 (5th Cir. 1981)................................................................................................10

## DOCKETED CASES

*In re Catalina Mktg. Corp. Sec. Litig.*,
  No. 8:03-cv-1582, Slip Op. (M.D. Fla. Jan. 29, 2006) .........................................................21

## STATUTES & RULES

Fed. R. Civ. P. 23(a) ...................................................................................................... *passim*

Fed R. Civ. P. 23(a)(1)............................................................................................................10

Fed. R. Civ. P. 23(a)(2)...................................................................................................11

Fed. R. Civ. P. 23(a)(3)...................................................................................................13

Fed. R. Civ. P. 23(a)(4)...................................................................................................14

Fed. R. Civ. P. 23(b)(3)............................................................................................. *passim*

Fed. R. Civ. P. 23(b)(3)(A)..............................................................................................22

Fed R. Civ. P. 23(b)(3)(A)-(D).........................................................................................22

Fed. R. Civ. P. 23(g)(1)(A)..............................................................................................24

17 C.F.R. § 240.10b-5.......................................................................................................9

SEC Securities Act Release No. 6331 (Aug. 13, 1981)...................................................20

Lead Plaintiffs, the New Mexico State Investment Council ("SIC"), the Public

Employees Retirement Association of New Mexico ("PERA"), the Teachers' Retirement

System of Louisiana ("Louisiana Teachers"), the Policemen's Annuity and Benefit Fund of

Chicago ("Chicago Police"), and the Public School Teachers' Pension and Retirement Fund

of Chicago ("Chicago Teachers") (collectively, "Lead Plaintiffs"),[1] pursuant to Rules 23(a)

and 23(b)(3) of the Federal Rules of Civil Procedure and Local Rule 4.04, respectfully move

this Court for an order appointing them as class representatives, certifying this action as a

class action on behalf of a plaintiff class consisting of all persons or entities who, between

February 14, 2005 and October 25, 2007 (the "Class Period"), purchased or otherwise

acquired the common stock of Defendant WellCare Health Plans, Inc. (together with its

subsidiaries, "WellCare" or the "Company"), and were damaged thereby (the "Class"),[2] and

appointing Labaton Sucharow LLP ("Labaton") and Bernstein Litowitz Berger & Grossmann

LLP ("BLB&G") as Class counsel.  While the exact number of purchasers of WellCare stock

during the Class Period cannot be determined at this stage, the Class likely consists of

thousands of individuals and institutions.  Lead Plaintiffs believe the most efficient means of

providing notice to class members will likely be by mail and publication.  Lead Plaintiffs will

---

[1] By Order dated March 11, 2008, the Court appointed the New Mexico State Investment Council, the Public Employees Retirement Association of New Mexico, the Teachers' Retirement System of Louisiana, the Policemen's Annuity and Benefit Fund of Chicago, and the Public School Teachers' Pension and Retirement Fund of Chicago to serve as Lead Plaintiffs.  March 11, 2008 Order ("3/11/08 Order"), Doc. No. 48, at 7.

[2] Excluded from the Class are:  (1) defendant Todd S. Farha ("Farha"), the Company's Chief Executive Officer and President during the Class Period; (2) defendant Paul L. Behrens ("Behrens"), the Company's Chief Financial Officer and Senior Vice President during the Class Period; (3) defendant Thaddeus Bereday, the Company's General Counsel and Senior Vice President during the Class Period (Farha, Behrens and Bereday are collectively referred to as the "Officer Defendants", and together with the Company are collectively referred to as "Defendants"); (4) any entity in which Defendants have or had a controlling interest; (5) officers and directors of the Company at all relevant times; and (6) the legal representatives, heirs, successors, or assigns of any of the excluded persons or entities.

work closely with Defendants to coordinate notice to class members and to resolve any issues associated with the payment of costs of providing notice.

**MEMORANDUM OF LAW**

## I.   <u>PRELIMINARY STATEMENT</u>[3]

This is a securities class action brought on behalf of investors who purchased WellCare's common stock during the Class Period.  Lead Plaintiffs assert claims against Defendants for violations of Sections 10(b), 20(a) and 20A of the Securities Exchange Act of 1934 (the "Exchange Act").  The gravamen of Lead Plaintiffs' Complaint is that, throughout the Class Period, Defendants artificially inflated WellCare's net income and stock price by booking as profit millions of dollars of Medicaid funds that WellCare was legally required to return to the Medicaid program.  *See* Compl. ¶¶ 3-5, 51-71, 114-20.  WellCare's fraud was revealed to investors on October 24, 2007, when 200 armed federal and state agents stormed WellCare's Tampa headquarters in a raid that was unprecedented in size and character in the history of the health care industry.  *Id.* at ¶¶ 10-11, 106-13.  In response, WellCare's stock price fell $80 on a single day.  Compl. ¶ 11.

Certification is proper when the class representatives have standing to bring claims on behalf of the putative class, and if:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; (4) the representative parties will fairly and adequately protect the interests of the class; (5) common

---

[3] Citations to "¶ __" refer to paragraphs of the Consolidated Class Action Complaint For Violations Of Federal Securities Laws dated October 31, 2008 (the "Complaint" or "Compl.").  Unless otherwise defined herein, capitalized terms have the meaning ascribed to them in the Complaint.

issues of law or fact predominate over issues affecting only individual members; and (6) a

class action is superior to other methods of adjudication.  Fed. R. Civ. P. 23(a), 23(b)(3).

Each of these requirements is met here.

## II.     CLASS ACTION ALLEGATIONS

There can be no dispute that Lead Plaintiffs have standing, in that each suffered large

financial losses as a result of its purchases of WellCare stock during the Class Period.

There are numerous members of the Class who share common questions of law and

fact in this litigation.  Lead Plaintiffs' claims are identical to those of the Class, and Lead

Plaintiffs, who are institutional investors with experienced counsel, can fairly and adequately

represent the interests of the Class.

Additionally, Lead Plaintiffs can demonstrate their adequacy as class representatives

under Rule 23(a) through their diligent prosecution of this case to date, and by the

accompanying Declarations of:  (1) Nan E. Erdman, Assistant Attorney General for the State

of New Mexico, on behalf of the New Mexico State Investment Council and the Public

Employees Retirement Association of New Mexico (the "Erdman Decl."); (2) Maureen H.

Westgard, the Director of the Teachers' Retirement System of Louisiana (the "Westgard

Decl."); (3) John J. Gallagher, Jr., the Executive Director of the Policeman's Annuity and

Benefit Fund of Chicago ("Gallagher Decl."); and (4) Kevin Huber, the Executive Director

of the Public School Teachers' Pension and Retirement Fund of Chicago ("Huber Decl."),

attached as Exhs. 1, 2, 3, and 4, respectively, to the Declaration of Michael W. Stocker in

Support of the Motion for Class Certification ("Stocker Decl.").  As set forth in their

Declarations, Lead Plaintiffs are experienced in directing the prosecution of securities fraud class actions, and fully understand their duties to the proposed Class in this case.

Further, Lead Counsel Labaton and BLB&G have proven track records in the prosecution of complex class actions, both in this judicial district and nationwide. *See* Firm resumes of Labaton and BLB&G, attached as Exhs. 5 and 6, respectively, to the Stocker Decl.

Lead Plaintiffs' claims also satisfy the predominance and superiority requirements of Rule 23(b)(3).  The Complaint alleges that all Class members suffered damages at the hands of the same defendants, based on the same set of misstatements and omissions, during the same time period.  Class treatment thus promises to enhance the efficient adjudication of the claims of all members of the putative Class.  Further, because Lead Plaintiffs have asserted the fraud-on-the-market theory, the Class is entitled to a presumption of reliance, and, thus, common issues outweigh any individual factual questions with respect to reliance.

Indeed, Lead Plaintiffs here have more than merely alleged the applicability of the fraud-on-the-market theory.  Lead Plaintiffs have also submitted in connection with their motion the Declaration of John D. Finnerty, Ph.D. (the "Finnerty Decl.", attached as Exhibit 7 to the Stocker Decl.), a well-recognized expert on market efficiency.  As set forth in Dr. Finnerty's Declaration, Dr. Finnerty analyzed the market for WellCare's stock under the factors set forth in *Cammer v. Bloom*, 711 F.Supp. 1264 (D.N.J. 1989), and concluded that the market for WellCare stock was efficient throughout the Class Period, and that the disclosure of the Company's fraud caused a statistically significant drop in the price of its

stock.  *See* Finnerty Decl. at ¶¶ 9, 80-82.  Accordingly, the requirements of Rule 23(b)(3) are also satisfied.

In sum, both the jurisdictional requirement of standing and the requirements of Rule 23 are easily satisfied in this case.  Accordingly, Lead Plaintiffs respectfully request that the proposed Class be certified, that SIC, PERA, Louisiana Teachers, Chicago Police, and Chicago Teachers be certified as class representatives, and that Labaton and BLB&G be appointed class counsel.

## III.   STATEMENT OF FACTS

### A.   Summary of the Complaint

Lead Plaintiffs allege that, throughout the Class Period, Defendants artificially inflated WellCare's net income by retaining and booking as profit funds that WellCare was legally obligated to refund to states with which the Company had contracted.  Compl. ¶¶ 3-5, 51-71, 114-27; September 28, 2009 Order Denying Motions to Dismiss ("9/28/09 Order"), Doc. No. 138, at 2-3.  WellCare's fraud was revealed to the public when, on October 24, 2007, the Company's Florida headquarters was raided by 200 armed state and federal agents, who confiscated the computers of defendants Farha and Behrens, and seized thousands of pages of documents relating to the Company's fraud.  Compl. ¶ 10; 9/28/09 Order at 3-4.  As a result of the raid and disclosure of the fraud, the Company's stock price plummeted approximately $80 per share.  Compl. ¶ 11.

On May 5, 2009, Defendant WellCare entered into a Deferred Prosecution Agreement ("DPA") with the U.S. Attorney for the Middle District of Florida and the Florida Attorney General (attached as Exh. 8 to the Stocker Decl.).  In the DPA, WellCare admitted that the

Company and its senior officers intentionally engaged in a criminal conspiracy to
misappropriate Medicaid funds for the purpose of artificially inflating WellCare's reported
income.  *Id*.  Specifically, in the DPA, WellCare admitted that since "mid-2002, and
continuing through at least October 2007" – or throughout the entire Class Period –
"WellCare, underline acting through its former officers . . . knowingly and willfully conspired" to
"falsely and fraudulently inflate [the] medical expenditure information" it reported to Florida.
DPA Statement of Facts ("DPA SOF"), included as attachment A to the DPA, at ¶ 1.
WellCare further admitted that the purpose of this criminal conspiracy was to "benefit
WellCare through an increase in profits" by allowing it to retain approximately $40 million
in Medicaid premiums that it was legally obligated to return to Florida (DPA SOF at ¶ 21(a),
¶ 1); and that its "former officers and employees, acting within the scope of their duties and
authorities, . . . engage[d] in meetings and other conduct in a concerted effort to conceal and
cover-up" the criminal conspiracy.  DPA SOF at ¶ 21(c).  WellCare also admitted that it
"received approximately $40 million in proceeds to which WellCare was not entitled as a
result of its conduct under certain Florida Medicaid and Florida Healthy Kids Corporation
Program contracts."  DPA at ¶ 6.[4]  The Company also has agreed to pay a total of $80 million
to the U.S. Attorney, representing the $40 million it misappropriated from the Florida
Medicaid program ($33.6 million) and the related Healthy Kids program ($6.4 million), and a
$40 million fine.  *Id*.

---

[4] WellCare has agreed to "fully cooperate with federal and state law enforcement agencies" in their
"continuing investigation of individuals responsible for" the fraud – *i.e.*, WellCare's "former officers,"
including Defendants Farha, Behrens, and Bereday.  DPA SOF at ¶ 9(A).

**B.**     **The Proposed Class Representatives**

SIC is primarily responsible for managing the State of New Mexico's approximately

$13 billion in permanent trust funds on behalf of all New Mexico residents.  Exh. 1, Erdman

Decl. ¶ 3.  SIC's Investment Office also provides investment management services to

nineteen state agencies and political subdivisions.  *Id.*  During the Class Period, SIC

purchased 219,200 shares of Wellcare stock and suffered substantial losses as a result of

defendants' violations of the federal securities laws.  *Id.*

PERA is responsible for preserving, protecting, and administering the approximately

$10 billion trust for over 27,000 former State of New Mexico employees and their spouses

and children.  Exh. 1, Erdman Decl. ¶ 4.  During the Class Period, PERA purchased 39,500

shares of Wellcare stock and suffered substantial losses as a result of defendants' violations

of the federal securities laws.  *Id.*

Louisiana Teachers is the state's largest public retirement system, providing services

and benefits to more than 160,000 individuals.  Exh. 2, Westgard Decl. ¶ 3.  Its sole purpose

is to safeguard and manage the money it holds in trust to provide retirement income for its

members.  *Id.*  As of June 30, 2009, Louisiana Teachers had assets of over $11.3 billion.  *Id.*

During the Class Period, Louisiana Teachers purchased 185,636 shares of Wellcare stock and

suffered substantial losses as a result of defendants' violations of the federal securities laws.

*Id.*

Chicago Police is responsible for providing retirement, survivor and disability

benefits to City of Chicago police officers.  Exh. 3, Gallagher Decl. at ¶ 3.  As of December

31, 2009, Chicago Police had assets of over $3 billion and approximately 26,000 plan

members.  *Id.*  During the Class Period, Chicago Police purchased 38,600 shares of Wellcare

stock and suffered substantial losses as a result of defendants' violations of the federal

securities laws.  *Id.*

Chicago Teachers is the administrator of a multi-employer defined benefit public

employee retirement system providing retirement, survivor, and disability benefits for

certified teachers and employees of the Chicago Public Schools.  Exh. 4, Huber Decl. ¶ 3.  As

of December 31, 2009, Chicago Teachers had assets of over $9.3 billion and approximately

60,000 members.  *Id.*  During the Class Period, Chicago Teachers purchased 120,545 shares

of Wellcare stock and suffered substantial losses as a result of defendants' violations of the

federal securities laws.  *Id.*  In total, Lead Plaintiffs lost more than $10 million on their

investments in WellCare.

## IV.   <u>ARGUMENT</u>

The Eleventh Circuit has held that class actions afford an indispensable mechanism

for the conservation of judicial resources by providing a single forum in which to litigate

similar claims.  *See Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) ("[s]eparate

actions by each of the class members would be repetitive, wasteful, and an extraordinary

burden on the courts.").[5]  This Court has held that "[f]or a district court to certify a class

action, the plaintiffs must have standing, and the putative class must meet each of the

requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the

requirements set forth in Rule 23(b)."  *Sher v. Raytheon Co.*  261 F.R.D. 651, 654 (M.D. Fla.

---

[5] Moreover, "the interests of justice require that in a doubtful case . . . any error, if there is to be one should be committed in favor of allowing a class action."  *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 427 (S.D. Fla. 1991) (quoting *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968)).

2009) (citing *Klay v. Humana, Inc.,* 382 F.3d 1241, 1250 (11th Cir. 2004)).  Because each of these prerequisites is met in this case, the Court should certify the proposed Class and appoint Lead Plaintiffs as class representatives.

### A.    <u>Lead Plaintiffs Have Standing</u>

Standing in a securities fraud case is restricted to "purchasers or sellers of securities." Exchange Act, §§ 10(b), 20(a), 15 U.S.C.A. §§ 78j(b), 78t(a); 17 C.F.R. § 240.10b-5.  Here, as set forth in Lead Plaintiffs' Declarations, each of the Lead Plaintiffs purchased the common stock of WellCare during the Class Period, and was injured thereby.  Exh. 1, Erdman Decl. at ¶¶ 3, 4; Exh. 2, Westgard Decl. at ¶ 3; Exh. 3, Gallagher Decl. at ¶ 3; Exh. 4, Huber Decl. at ¶ 3.  Accordingly, they have standing to pursue their claims under Sections 10(b) and 20(a) of the Exchange Act.  *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 749 (1975) (upholding rule that only purchasers and sellers of securities have standing under the securities laws).

### B.    <u>The Requirements of Rule 23(a) Are Satisfied</u>

Rule 23(a) sets out four requirements for class certification.  A representative party or parties may sue on behalf of a class if:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a); *see also Kirkpatrick v. J.C. Bradford & Co.* 827 F.2d 718, 721 n.2 (11th Cir. 1987).  As the Complaint makes clear, this action meets each of these requirements.

### 1.   The Members of the Class Are So Numerous That Joinder of All Members Is Impracticable

Rule 23(a)(1) provides that a class may be certified if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no fixed numerosity rule, the Eleventh Circuit has held that "[g]enerally, less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Sher*, 261 F.R.D. at 663 (citing *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1986)). In class action suits involving nationally traded securities, such as this one, "the numerosity requirement of Rule 23(a)(1) is generally assumed to have been met." *Zeidman v. McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981); *In re HealthSouth Corp. Sec. Litig.*, 261 F.R.D. 616, 626 (N.D. Ala. 2009) ("Where, as here, a case involves nationally traded securities, numerosity may be assumed.").

Moreover, "[t]he decision as to whether joinder is impracticable is essentially a subjective determination based on expediency . . . and therefore, a court should consider whether certifying the class would serve important interests of judicial economy." *Tapken v. Brown*, No. 90-691, 1992 WL 178984, at *27 (S.D. Fla. Mar. 13, 1992); *In re HealthSouth Sec. Litig.* 213 F.R.D. 447, 457 (N.D. Ala. 2003) ("[i]mpracticable does not mean impossible; Plaintiffs need only show that it would be extremely difficult or inconvenient to join all members of the class.") (internal quotes and citations omitted).

WellCare had an average of 40,100,890 outstanding shares of common stock during the Class Period with numerous beneficial holders, including between 98 and 317 institutional holders (Exh. 7, Finnerty Decl. at ¶¶ 18, 23, Exh. B). *See Walco Invs. Inc. v. Thenen* 168 F.R.D. 315, 325 (S.D. Fla. 1996) (certifying class in securities action because

10

members were "geographically dispersed across the United States and Canada" making it

"extremely inconvenient and a waste of valuable judicial resources to try several hundred

individual lawsuits."). During the Class Period, WellCare's common stock was listed and

actively traded on the New York Stock Exchange, an open and efficient market. *See* Exh. 7,

Finnerty Decl. at ¶ 24. While the exact number of purchasers of WellCare stock during the

Class Period cannot be determined at this stage, the Class likely consists of thousands of

individuals and institutions. *See Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490

(S.D. Fla. 2003) (finding numerosity prong satisfied without a precise or estimated number of

class members in a securities class action where there are thousands of record holders of a

common stock and millions of outstanding shares); *Tapken*, 1992 WL 178984, at *27.

Accordingly, numerosity is satisfied here.

### 2.   Questions of Law and Fact Are Common to the Class

Rule 23(a)(2) provides that a class may be certified if "there are questions of law or

fact common to the class." Fed. R. Civ. P. Rule 23(a)(2). "Commonality may be established

where there are allegations of common conduct or standardized conduct by the defendant

directed toward members of the proposed class." *Sher*, 261 F.R.D. at 663-64 (citing *Strube*

*v. American Equity Inv. Life Ins. Co.,* 226 F.R.D. 688, 695 (M.D. Fla. 2005)).

Rule 23(a)(2) does not require that all of the questions of law or fact raised by the

case be common to all class members. *See Cox*, 784 F.2d at 1557; *Walco Invs. Inc.*, 168

F.R.D. at 324. In cases alleging a unified scheme to defraud investors, courts in this District

have concluded that the commonality requirement of Rule 23(a)(2) is readily satisfied. *Avery*

*v. Uniroyal Tech. Corp.*, No. 8:02 CV 2238T27MAP, 2005 WL 1205607, at *3 (M.D. Fla.

11

May 20, 2005); *see also Cheney*, 213 F.R.D. at 490 ("where a common scheme is alleged, common questions of law or fact will exist.").

Here, the Complaint alleges numerous questions of law and fact common to all class members, such as:

- whether the federal securities laws were violated by Defendants' alleged acts;

- whether WellCare's publicly disseminated statements during the Class Period omitted and/or misrepresented material facts, and whether Defendants breached any duty to disclose material facts or to correct material facts previously disseminated;

- whether Defendants participated in and pursued the fraudulent course of business complained of;

- whether Defendants acted willfully, with knowledge or recklessly, in omitting and/or misrepresenting material facts;

- whether WellCare's common stock prices during the Class Period were artificially inflated due to the alleged material omissions and/or misrepresentations; and

- whether the members of the Class have sustained damages and, if so, what is the appropriate measure of damages.

The same facts that give rise to Lead Plaintiffs' claims also give rise to the absent Class members' claims. In fact, absent Class members necessarily would have to prove the identical facts and answer identical legal questions if they pursued their claims individually. *Odmark v. Mesa Ltd. P'ship*, No. 3:91-CV-2376-X, 1992 WL 203541, at *3 (N.D. Tex. June 5, 1992) ("If the class plaintiffs prove their case with respect to the alleged wrongful conduct, they will also have provided all the proof needed on the issue of misrepresentation for every other member of the class."). In sum, the Complaint alleges numerous common questions of law and fact that satisfy Rule 23(a)(2). *Cheney*, 213 F.R.D. at 491 ("[t]he commonality

requirement of 23(a)(2) is met here because there are a substantial number of questions of fact and law noted above that are common to the class."); *HealthSouth*, 213 F.R.D. at 458 ("The court concludes that some questions of law or fact are common to the class and, thus, plaintiffs have met the minimum requirement of Fed. R. Civ. P. 23(a)(2)").

### 3.   Lead Plaintiffs' Claims Are Typical of Those of the Class

Rule 23(a)(3) provides that a class may be certified if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "Typicality is satisfied when a plaintiff's claim 'arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory.'"  *Sher*, 261 F.R.D. at 664 (quoting *Sala v. National R.R. Passenger Corp.,* 120 F.R.D. 494, 497 (E.D. Pa. 1988)).

Typicality does not mean that the claims of the representative parties must be identical to those of the absent class members.  *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).  Rather, "the typicality requirement is generally met if the class representative and the class members received the same unlawful conduct, irrespective of whether the fact patterns that underlie each claim vary."  *Rosario-Guerrero v. Orange Blossom Harvesting*, No. 2:09-cv-106-FTM-29DNF, 2010 WL 672808, at *8 (M.D. Fla. Feb. 23, 2010).  The principal concern "is whether the named class representatives' claims have the same essential characteristics as the class members at large." *Id*.

Here, there can be no serious dispute that Lead Plaintiffs' claims are typical of those of the Class.  Lead Plaintiffs' claims are typical of other Class members because each:

(1) purchased or acquired WellCare shares that were artificially inflated as a result of

Defendants' false statements, omissions and deceptive conduct; and (2) suffered damages

common to all other Class members when the Defendants' fraud was revealed.  Since Lead

Plaintiffs seek to prove that Defendants "committed the same unlawful acts in the same

methods against an entire class . . . all members of this class have identical claims" and,

therefore, the typicality requirement of Rule 23(a)(3) is satisfied.  *Kennedy*, 710 F.2d at 717;

*accord Kirkpatrick*, 827 F.2d at 722-25.  In fact, "[a]s long as Plaintiffs assert, as they do

here, that Defendants committed the same wrongful acts in the same manner against all

members of the class, they establish the necessary typicality."  *Amerifirst*, 139 F.R.D. at 429.

### 4.  Lead Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) provides for class certification where "the representative parties will

fairly and adequately protect the interests of the class."  Fed R. Civ. P. 23(a)(4).  "The

adequacy-of-representation requirement encompasses two separate inquiries:  (1) whether

any substantial conflicts of interest exist between the representatives and the class; and

(2) whether the representatives will adequately prosecute the action."  *Sher*, 261 F.R.D. 665

(quoting *Busby v. JRHBW Realty,* Inc., 513 F.3d 1314, 1323 (11th Cir. 2008)).  This

requirement is met where it appears that:  (1) the proposed representatives have interests in

common with, and not antagonistic to, the interests of the class; and (2) plaintiffs' attorneys

are qualified, experienced, and generally able to conduct the litigation.  *Kirkpatrick*, 827 F.2d

at 726; *Tapken*, 1992 WL 178984, at *29.

Here, Lead Plaintiffs satisfy both prongs of the adequacy test of Rule 23(a)(4).  Lead

Plaintiffs' interests are coextensive with those of prospective Class members and like all

members of the proposed Class, possess claims under the federal securities laws against the

Defendants in connection with their purchase or acquisition of WellCare common stock

during the Class Period.  Lead Plaintiffs, like all Class members, were also injured by

Defendants' wrongful acts, including Defendants' misrepresentations in connection with the

sale of WellCare common stock.  Proof of Lead Plaintiffs' claims will necessarily involve

adjudicating the same issues of law and fact as the claims of the Class as a whole.  Thus,

Lead Plaintiffs and the Class they seek to represent have the same interests in recovering

damages caused by Defendants' wrongful conduct.

There can also be no question that Lead Plaintiffs can adequately prosecute this

action.  Lead Plaintiffs here consist of a non-cabinet-level agency established by state

legislation reporting to the Governor of New Mexico, and several large public pension funds.

As sophisticated institutional investors, each is able to take an active role in supervising the

litigation of the Class' claims.  *See* Exh. 1, Erdman Decl. ¶¶ 6, 8; Exh. 2, Westgard Decl.

¶¶ 5, 7; Exh. 3, Gallagher Decl. ¶¶ 5, 7;  Exh. 4, Huber Decl. ¶¶ 5, 7.  As this Court found in

its March 11, 2008 Order, Lead Plaintiffs have "a willingness to vigorously prosecute the

action," "experience as serving as a lead plaintiff in the past, and [Lead Plaintiffs] are

sophisticated institutional investors with a real financial interest in the litigation."  3/11/08

Order at 3.

Lead Plaintiffs will continue to supervise and monitor the progress of the litigation

and actively participate in its prosecution by, among other things:

- receiving periodic status reports from Lead Counsel on case developments;

- engaging in regular discussions with Lead Counsel concerning the conduct of
  this litigation; and

- reviewing the key pleadings and briefs submitted in this matter; and

- participating in discovery through document production and depositions.

*See* Exh. 1, Erdman Decl. ¶ 6; Exh. 2, Westgard Decl. ¶ 5; Exh. 3, Gallagher Decl. ¶ 5; Exh. 4, Huber Decl. ¶ 5.

Lead Plaintiffs have also demonstrated their adequacy by retaining counsel experienced in securities class action litigation to prosecute their claims and the claims of the Class. This Court, by Order entered March 11, 2008, approved Lead Plaintiffs' selection of Labaton and BLB&G as co-lead counsel for the Lead Plaintiffs. 3/11/08 Order at 7.

Lead Plaintiffs respectfully submit that they have retained counsel who is qualified, experienced and fully capable of prosecuting this litigation on behalf of the Class. Following the Court's March 11, 2008 Order, the firms have: (1) undertaken an extensive investigation into the Class' claims; (2) drafted and filed the detailed Complaint; (3) served document requests and interrogatories on Defendants and subpoenas *duces tecum* on numerous non-party entities; and (4) litigated the case in a professional and competent manner.

Moreover, Labaton and BLB&G have a proven track record in the prosecution of complex class actions, both in this judicial district and nationwide. *See* Firm resumes of Labaton and BLB&G attached as Exhs. 5 and 6, respectively, to the Stocker Decl. In sum, Lead Plaintiffs are represented by counsel with recognized and extensive experience in the prosecution and successful resolution of complex securities fraud class actions in courts throughout the United States.

In view of these facts, Lead Plaintiffs satisfy the adequacy requirements of Rule 23(a).

C.     **The Requirements of Rule 23(b) Are Satisfied**

As noted above, in addition to meeting the prerequisites of Rule 23(a), a purported

class action must also satisfy at least one of the three conditions of subsection (b) of Rule 23.

Certification under Rule 23(b)(3) is appropriate here as "that the questions of law or fact

common to the members of the class predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for the fair

and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  To satisfy the

predominance requirement, plaintiffs must establish that "the issues in the class action that

are subject to generalized proof, and thus applicable to the class as a whole . . . predominate

over those issues that are subject only to individualized proof."  *Jackson v. Motel 6*

*Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir. 1997) (citations and quotation marks

omitted).

Securities fraud cases are especially suitable for treatment under Rule 23(b)(3) since

the elements of the cause of action generally relate to the acts or omissions of the defendants.

*In re Piedmont Office Trust, Inc. Sec. Litig.*, No. 1:07-CV-2660-CAP,  2010 WL 1030667, at

* 7 (N.D. Ga. Mar. 10, 2010) (citing, *inter alia*, *In re Scientific-Atlanta, Inc. Sec. Litig.,* 571

F. Supp. 2d 1315, 1343 (N.D. Ga. 2007)).

Here, both of the predominance and superiority requirements of Rule 23(b)(3) are

readily satisfied.

### 1.     Common Questions of Law and Fact Predominate

The Supreme Court has held that "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997).

The key inquiry under Rule 23(b)(3) is whether certification will ensure economies of time, money and judicial resources by allowing a few representatives to proceed on behalf of a larger group so that a class action would be the most efficient method of proceeding. *See, e.g.,* Fed. R. Civ. P. 23(b)(3) advisory committee's note ("[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action . . . ."). The predominance test "is readily met" in certain cases alleging securities fraud. *Amchem*, 521 U.S. at 625.

Courts typically focus on the issue of liability in deciding whether the predominance requirement is met, holding that common questions predominate where liability will be based on issues that are common to the class. *See Alexander Grant & Co. Litig.*, 110 F.R.D. 528, 534 (S.D. Fla. 1986) (citation omitted). As the Complaint alleges, Defendants' liability here turns on issues that are common to the Class – *i.e.*, whether Defendants made materially false and misleading statements with the requisite scienter, through a uniform course of conduct, to the detriment of all Class members. With the exception of individual damages calculations,[6] each of the factual and legal elements of liability in this case is common to all members of the Class.

---

[6]     As the Eleventh Circuit noted in *Klay*, "numerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." 382

Common questions will predominate with respect to the issue of reliance.  Lead Plaintiffs fraud claims rely on the fraud-on-the-market theory, which presumes reliance and is ideally suited to class actions alleging securities fraud.  *See Tapken*, 1992 WL 178984, at *29-30; *see also In re Miva, Inc. Sec. Litig.*, No. 2-05-cv-201-FtM 29DNF, 2008 WL 681755, at *8 (M.D. Fla. Mar. 12, 2008) (finding predominance requirement met where plaintiffs alleged fraud-on-the-market theory).

The Supreme Court expressly endorsed the fraud-on-the-market doctrine in *Basic, Inc. v. Levinson*, 485 U.S. 224, 227 (1988).  In *Basic*, the Supreme Court established that plaintiffs in securities fraud class actions are entitled to a rebuttable presumption of reliance where they allege their shares were purchased on an efficient market.  *Id.* at 241; *see also HealthSouth*, 213 F.R.D. at 454 (observing that the fraud-on-the-market theory "rests on the assumption that the market price of a security traded in an efficient market will be based on the material information available and that the market will respond to that information with buyers and sellers relying indirectly on material omissions or misrepresentations concerning the security.").

To qualify for the presumption of reliance, plaintiffs typically need only show, as is the case here, that the security at issue was traded on an exchange like the New York Stock Exchange ("NYSE"), which is an efficient market.  *See, e.g., HealthSouth*,  213 F.R.D. at 454 (listing the NYSE as an example of an efficient market); *In re Nortel Networks Corp. Sec. Litig.*, No. 01 Civ. 1855 (RMB), 2003 WL 22077464, at *5 (S.D.N.Y. Sept. 8, 2003) (rejecting defendants' claims that the NYSE was not an efficient market); *In re Frontier Ins.*

---

F.3d at 1259 (citations omitted); *see also Alexander Grant & Co.*, 110 F.R.D. at 534 (noting that "once liability and the relevant dates are established, assignment of damages becomes a ministerial task.").

*Group Sec. Litig.*, 172 F.R.D. 31, 42 (S.D.N.Y. 1997) (presuming reliance where stock was traded on the NYSE).

Nevertheless, here there is substantial additional evidence that WellCare stock was traded on an efficient market.  As the Declaration of Dr. Finnerty makes clear, each of the indictors of market efficiency described in the seminal decision of *Cammer*, 711 F. Supp. at 1285-87, are present in this case.[7]  Specifically, Dr. Finnerty has opined:

(1)    During the Class Period, there were over 40 million shares of WellCare stock outstanding and the average weekly volume was approximately 2.93 million shares (Exh. 7, Finnerty Decl. at ¶¶ 17-18, Exh. B.);

(2)    there was extensive stock analyst coverage of WellCare (*Id*. at ¶ 20);

(3)    there were numerous market makers facilitating trading and numerous institutional investors actively buying and selling WellCare stock during the Class Period (*Id*. at ¶¶ 23-24);

(4)    WellCare was eligible to (and did) register securities using a Form S-3 registration statement during the Class Period.[8]  (*Id*. at ¶ 26); and

(5)    the price of WellCare common stock responded promptly to significant or unexpected news regarding the company (*Id*. at ¶¶ 36-45).

---

[7]    Courts in this Circuit have applied the factors as set forth in *Cammer* and *Freeman*.  *See Cheney*, 213 F.R.D at 496-501; *Amerifirst,* 139 F.R.D at 430.  Those factors are that:  (1) the stock has a large weekly trading volume; (2) a significant number of securities analysts followed and reported on the company's stock during the applicable period; (3) the stock had numerous market makers and arbitrageurs; (4) the company was entitled to file an S-3 Registration Statement in connection with public offerings or, if ineligible, the ineligibility was the result of timing factors and not because the minimum stock requirements set forth in the Form S-3 instructions were not met; and (5) an historical showing of immediate price response to unexpected corporate events or financial releases.  *Cheney*, 213 F.R.D. at 498.

[8]    The significance of this particular factor is underscored by the SEC's explanation of the rationale for permitting certain companies to use the Form S-3 registration statement:

> This form is predicated on the Commission's belief that the market operates efficiently for these companies, *i.e.*, that the disclosure in Exchange Act reports and other communications by the registrant, such as press releases, has already been disseminated and accounted for by the market place.

SEC Securities Act Release No. 6331 (Aug. 13, 1981), as cited in *Cammer*, 711 F. Supp. at 1284.

In sum, where, as here, Defendants were engaged in a fraudulent scheme to artificially inflate the stock price of a publicly-traded company, the issues of law and fact that flow from the Defendants' activity clearly predominate over any individual issues.  In such circumstances, class certification is appropriate.

Moreover, common questions will predominate with respect to loss causation as well. While plaintiffs need not establish the predominance of common issues with respect to loss causation on a class certification motion,[9] Lead Plaintiffs here can conclusively rebut any assertion by Defendants that this action cannot be certified due to loss causation concerns under *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005).

As Dr. Finnerty states in his Declaration, the raid on WellCare's offices on October 24, 2007 caused a price decline of 62.95 percent that is statistically significant at a 99% confidence level.  Exh. 7, Finnerty Decl. at ¶¶ 44-45.  This evidence is more than sufficient to demonstrate that Defendants' statements, omissions and deceptive conduct caused Lead Plaintiffs' losses.  This evidence also satisfies *Dura's* minimal requirements that a plaintiff

_____

[9]    Courts within the Eleventh Circuit have uniformly held that plaintiffs do not need to establish loss causation at the class certification stage, recognizing that such inquiry relates solely to the merits.  *See e.g., In re Catalina Mktg. Corp. Sec. Litig.*, No. 8:03-cv-1582, slip op. at 36 (M.D. Fla. Jan. 29, 2006) ("While the matter of loss causation may become pertinent to the merits of Plaintiffs' claims and the timing of purchases may impact on damages and the asserted defenses must be addressed in due course, the court is not now in a position to, nor must it, determine whether Plaintiffs can meet their burden of proof on these substantive issues before deciding the class certification issue."); *In re NetBank Inc.*, 259 F.R.D. 656, 676 (N.D. Ga. 2009) (holding that the Eleventh Circuit does not require proof of loss causation at the class certification stage); *In re HealthSouth Corp. Sec. Litig.*, 257 F.R.D. 260, 283 (N.D. Ala. 2009) (same).  Numerous courts throughout the country have similarly held that class certification is an improper stage to determine the loss causation element.  *See e.g., Freeland v. Iridium World Commc'ns Ltd.*, 233 F.R.D. 40, 47 (D.D.C. 2006) (refusing to determine whether plaintiff would "not be able to prove in his 10b-5 claim that the decline in the price of his stock was proximately caused by Defendants alleged misrepresentations" because it "would require the Court to venture into the merits of [plaintiff's] claim . . ."); In re *LDK Solar Sec. Litig.*, 255 F.R.D. 519, 530-31 (N.D. Cal. 2009) (certifying the class and declining to adopt loss causation requirement for class certification, stating that the "[Ninth] circuit's precedent strongly suggests it would reject such a rule"); *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 186 (S.D.N.Y. 2008) ("Nothing in *Basic* or any U.S. Court of Appeals for the Second Circuit precedent requires that a plaintiff prove loss causation by a preponderance of the evidence in order to invoke the Basic presumption and satisfy the requirements of Fed. R. Civ. P. 23.").

provide defendants with "some indication of the loss and the causal connection that the plaintiff has in mind."  *See Dura Pharm.*, 544 U.S. at 347.[10]

### 2.   A Class Action Is Superior To Other Available Methods For the Fair and Efficient Adjudication of This Controversy

Here, a class action is plainly superior to other available methods for the fair and efficient adjudication of the controversy.  Rule 23(b)(3)(A)-(D) sets forth the following factors that courts should consider in making the "superiority" determination:

(A)    the interest of members of the class in individually controlling the prosecution . . . of separate actions;

(B)    the extent and nature of any litigation concerning the controversy already commenced by . . . members of the class;

(C)    the desirability . . . of concentrating the litigation of the claims in the particular forum; and

(D)    the difficulties likely to be encountered in the management of a class action.

These factors make clear that a class action is the only practical method of obtaining a fair and efficient disposition of these claims.  With respect to Rule 23(b)(3)(A) and (B), there is no indication that any member of the Class would prefer to "control[] the prosecution . . . of separate actions."  Fed R. Civ. P. 23(b)(3)(A).  This is a complex action involving extensive discovery.  Given the nature of the action, and the prohibitive costs that would be associated with separate prosecutions, very few (if any) Class members could prosecute this

---

[10]    *See also In re Daou Sys.*, 411 F.3d 1006, 1026-27 (9th Cir. 2005) (loss causation satisfied where "the price of *Daou's* stock fell precipitously after defendants began to reveal figures showing the company's true financial condition); *Cooper v. Pacific Life Ins. Co.*, 229 F.R.D. 245, 262 (S.D. Ga. 2005) ("it will not be difficult to attribute the loss to the alleged wrongdoing, as is true in other securities fraud cases where a particular stock or bond is asserted to have garnered an inflated price due to fraud ('loss causation')"); *Lagrasta v. First Union Sec. Inc.*, No. 01-CV-251, 2005 WL 1875469 (M.D. Fla. Aug. 8, 2005) (loss causation satisfied where plaintiffs simply asserted "that there is a proximate relationship between the loss and the misrepresentation").

case on an individual basis. *See Walco Invs.*, 168 F.R.D. at 337 (finding that superiority is established where it would be extremely costly, not to mention unnecessarily duplicative, for a class action member to try th[e] action separately."). Thus, with respect to the first two factors, all relevant considerations weigh in favor of class certification.

With respect to 23(b)(3)(C), WellCare's principal place of business is located in this District, and the Company transacted substantial business here. Much of the conduct complained of occurred in this District, and much of the evidence and many of the witnesses relevant to Lead Plaintiffs' claims are located here. This forum, therefore, is the most desirable in which to prosecute this action. With respect to subparagraph (D), there is no reason to believe that Co-Lead Counsel, who have substantial experience in class action litigation in this and other districts, will encounter significant or unusual difficulties in the management of this litigation. Further, it is obviously desirable to concentrate the litigation in one forum, thereby avoiding inconsistent adjudications and affording both the Court and the parties the benefits of judicial economy. *See Walco Invs.*, 168 F.R.D. at 337 ("As to the desirability of concentrating this action in this forum, the Court notes that certifying this class will prevent the duplication of effort and the possibility of inconsistent results.").

Courts have uniformly recognized that the class action is superior to other available methods – particularly duplicative individual lawsuits – for the fair and efficient resolution of large-scale securities fraud actions. The Supreme Court has held that "[c]lass actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [M]ost of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). The Eleventh Circuit

has similarly commended class actions as superior to other methods of adjudication of claims under the federal securities laws, and found such claims particularly suitable to class treatment given the large number of potential plaintiffs and the likelihood that individual claims would often be too small to warrant individual suits. *Kirkpatrick*, 827 F.2d at 725; *Lipton v. Documation Inc.*, 734 F.2d 740, 745 (11th Cir. 1984). "It would be impracticable to permit individual suits by each shareholder of stock during the relevant class period as it is alleged that there are thousands of purchasers who have been injured by the alleged wrongful acts of the Defendants." *Cheney*, 213 F.R.D. at 502.

Consistent with the requirements of Rule 23(b)(3), the certification of this litigation as a class action would not only be "superior to other available methods for the fair and efficient adjudication of the controversy" (Fed. R. Civ. P. 23(b)(3)), but appears to be the sole method for fairly and efficiently litigating the claims of all members of the proposed Class. In short, there can be no doubt that the prosecution of this action as a class action will "achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated." *Dolgow v. Anderson*, 43 F.R.D. 472, 488 (E.D.N.Y. 1968) (citation omitted).

### D. The Court Should Appoint Co-Lead Counsel For Lead Plaintiffs As Class Counsel Under Rule 23(g)

Rule 23(g)(1)(A) provides that "[u]nless a statute provides otherwise, a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1)(A); *see In re NTL Inc. Sec. Litig.*, No. 02 Civ 3013, 2006 WL 330113, at *11 n.19 (S.D.N.Y. Feb. 14, 2006) (finding Rule 23(g) guides the issue of appropriate class counsel). Lead Plaintiffs

respectfully request that Labaton and BLB&G, Court-appointed Co-Lead Counsel for Lead Plaintiffs, be appointed class counsel here.

As discussed above in Section B.4., Labaton and BLB&G are among the nation's preeminent law firms in this area of practice and each firm has a proven track record in the prosecution of complex class actions, both in this judicial district and nationwide.  *See* Firm resumes of Labaton and BLB&G, attached as Exhs. 5 and 6, respectively, to the Stocker Decl.  Accordingly, Labaton and BLB&G should be appointed Class counsel.

## V.   <u>CONCLUSION</u>

For all of the foregoing reasons, Lead Plaintiffs respectfully requests that the Court: (1) certify this action as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (2) appoint Lead Plaintiffs as the representatives of the proposed Class; (3) appoint Labaton and BLB&G as Class counsel; and (4) grant such further relief as the Court deems just and proper.

Dated:  April 30, 2010

**BERNSTEIN LITOWITZ BERGER**
**    & GROSSMANN LLP**

By:   /s/ Steven B. Singer
      Steven B. Singer
      Jeremy P. Robinson
      Laura H. Gundersheim
      John Rizio-Hamilton
      1285 Avenue of the Americas
      New York, New York 10019
      Tel: (212) 554-1400
      Fax: (212) 554-1444

*Counsel for Teachers' Retirement System*
*of Louisiana, Public School Teachers'*
*Pension & Retirement Fund of Chicago,*
*and Policemen's Annuity and Benefit*
*Fund of Chicago, and Court-appointed*
*Lead Counsel for the Class*

**BARRACK, RODOS & BACINE**
Jeffrey W. Golan
Chad A. Carder
Lisa M. Lamb
3300 Two Commerce Square
2001 Market Street
Philadelphia, Pennsylvania 19103
Tel: (215) 963-0600
Fax: (215) 963-0838

*Other Counsel for Public School Teachers'*
*Pension & Retirement Fund of Chicago*
*and Policemen's Annuity and Benefit Fund*
*of Chicago*

**LABATON SUCHAROW LLP**

By:   /s/ James W. Johnson
      Thomas A. Dubbs
      James W. Johnson
      Michael Stocker
      Michael Woolley
      140 Broadway
      New York, New York 10005
      Tel: (212) 907-0700
      Fax: (212) 818-0477

*Counsel for the New Mexico State*
*Investment Council and the Public*
*Employees Retirement Association of*
*New Mexico, and Court-appointed*
*Lead Counsel for the Class*

**JOHNSON, POPE, BOKOR, RUPPEL**
**    & BURNS, LLP**
Scott C. Ilgenfritz, FBN 394084
Post Office Box 1100
Tampa, Florida 33601-1100
Tel: (813) 225-2500
Fax: (813) 223-7118

*Liaison Counsel for Lead Plaintiffs and the*
*Class*