UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**EASTWOOD ENTERPRISES, LLC, et al.,**

    Plaintiffs,

v.                                   Case No.: 8:07-CV-1940-T-33EAJ

**TODD S. FARHA, et al.,**

    Defendants.
_____/

## ORDER

Before the court are the United States' **Amended Motion for an Immediate Limited Stay of Discovery** (Dkt. 218), WellCare Health Plans, Inc.'s **Brief in Support** (Dkt. 222), Lead Plaintiffs' **Brief in Response** (Dkt. 227), and Todd S. Farha, Paul Behrens, and Thaddeus Bereday's **Memorandum of Legal Authority in Opposition** (Dkt. 228).[1] Intervenor, the United States, asks that discovery in this matter be stayed for 120 days to avoid prejudice to a related criminal investigation pending before a grand jury.[2]

## Background[3]

In their amended class action complaint filed in October 2007, Plaintiffs assert a securities fraud claim under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and

---

[1] The United States was granted permission to intervene in this matter insofar as it seeks to stay discovery (Dkt. 220). Lead Plaintiffs and Defendant WellCare Health Plans, Inc. do not oppose the United States' motion to stay whereas Defendants Todd S. Farha, Paul Behrens, and Thaddeus Bereday do oppose it.

[2] While the exact nature of the grand jury investigation is unknown, there is no dispute that it pertains to the same actions alleged in this civil dispute.

[3] The facts alleged in the complaint are repeated here only to provide context for the United States' motion.

Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 (Dkt. 96 at 9). Plaintiffs allege that Defendant WellCare Health Plans, Inc. ("WellCare"), a managed health care company, misappropriated Medicaid funds in order to artificially inflate its publicly reported income and its stock price (Id. at 2). Plaintiffs further submit that Todd Farha ("Farha"), WellCare's Chief Executive Officer, Paul Behrens ("Behrens"), WellCare's Chief Financial Officer, and Thaddeus Bereday ("Bereday"), WellCare's General Counsel and Chief Compliance Officer, (collectively "the Former Executives") together sold approximately 1.47 million shares of WellCare stock at an artificially inflated price for proceeds of approximately $90.25 million (Id. at 4-5).

WellCare allegedly retained unspent Medicaid premiums as profits despite a legal obligation to return these premiums to the states with which it contracted (Id. at 3). Plaintiffs submit that this was accomplished in two steps (Id.). First, WellCare transferred the premiums to a wholly-owned subsidiary in the Cayman Islands as sham purchases of reinsurance (Id.). Second, WellCare designated these purchaes as direct medical costs in filings with state regulators (Id.).

In October 2007, more than 200 federal and state law enforcement agents executed a federal search warrant at WellCare's headquarters (Id. at 39). The agents seized laptop computers and enough documents to fill a moving truck (Id. at 40). The raid caused WellCare's stock price to drop $80 per share, approximately two-third of its value, and resulted in an immediate halt of trading of WellCare shares (Id. at 41). In December 2007, a WellCare Finance Manager pled guilty in federal court to conspiring to commit Medicare fraud (Id. at 43). The following month, Farha, Behrens, and Bereday resigned their positions with WellCare "without good reason" (Id. at 46).

Plaintiffs maintain that Defendants' actions violated a Florida statute governing the state's cost-effective purchasing of health care (Id. at 20). See Fla. Stat. § 409.912(4)(b) (2009) ("the 80/20

Statute"). The 80/20 Statute authorizes Florida's Medicaid agency, the Agency for Health Care Administration ("AHCA"), to contract with managed care plans for the provision of comprehensive behavioral health care services, defined as "covered mental health and substance abuse treatment services," to certain Medicaid recipients. Id. A contract between AHCA and a managed care plan must require that 80 percent of the "capitation" paid to the plan be expended on the provision of behavioral health care services. Id. If the plan spends less than 80 percent of the capitation on behavioral health care services, it must return the difference to AHCA. Id.

## Legal Standard

"[A] court must stay a civil proceeding pending resolution of a related criminal prosecution only when 'special circumstances' so require in the 'interests of justice.'" United States v. Lot 5, Fox Grove, Alachua County, Fla., 23 F.3d 359, 364 (11th Cir. 1994) (quoting United States v. Kordel, 397 U.S. 1, 12 & n.27 (1970)). "While a stay in a civil proceeding when no indictment has yet issued in the criminal proceeding is rare, issuing such a stay is within [a] court's inherent powers." S.E.C. v. Healthsouth Corp., 261 F. Supp. 2d 1298, 1327 (N.D. Ala. 2003).

In some instances, a stay may be justified by a litigant's use of civil discovery procedures to circumvent the limitations imposed by the criminal discovery rules.[4] See Application of Eisenberg, 654 F.2d 1107, 1113 (5th Cir. Unit B Sept. 1981).[5] The policy considerations justifying such stays

---

[4] "A criminal defendant is entitled to rather limited discovery, with no general right to obtain the statements of the Government's witnesses before they have testified." Degen v. United States, 517 U.S. 820, 825 (1996) (citing Fed. R. Crim. P. 16(a)(2), 26.2). "In a civil case, by contrast, a party is entitled as a general matter to discovery of any information sought if it appears 'reasonably calculated to lead to the discovery of admissible evidence.'" Id. at 825-26 (quoting Fed. R. Civ. P. 26(b)(1)).

[5] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d

are explained in Campbell v. Eastland, 307 F.2d 478 (5th Cir. 1962), a civil action for a tax refund. Id. at 480.  The plaintiffs, husband and wife, filed a claim against the Director of Internal Revenue seeking a refund of income taxes.  Id.  Two Special Agents assigned to investigate the matter recommended that criminal proceedings be commenced for tax evasion.  Id.  The Agents' reports were forwarded to the Department of Justice which placed the reports in its criminal files and eventually concluded that the husband should be indicted for willfully attempting to evade his income tax.  Id. at 480-81.  Before the husband was indicted, however, the plaintiffs moved to compel production of the Agents' reports and other documents under Rule 34, Fed. R. Civ. P.  Id. at 482.  The defendant responded by moving for a stay of proceedings pending disposition of the criminal case.  Id.  After granting the motion to compel, the trial court struck the defendant's answer and entered judgment in the plaintiffs' favor because the Department of Justice refused to produce the materials.  Id. at 483-84.

The Fifth Circuit reversed, finding that the plaintiffs had failed to meet their "heavy burden" when asking to inspect the government's criminal files. Id. at 487-88.  The court reasoned that the trial court's order was an "open invitation to taxpayers under criminal investigation to subvert the civil rules into a device for obtaining pre-trial discovery against the Government in criminal proceedings."  Id. at 488.  As the court explained:

> In handling motions for a stay of a civil suit until the disposition of a criminal prosecution on related matters and in ruling on motions under the civil discovery procedures, a judge should be sensitive to the difference in the rules of discovery in civil and criminal cases.  While the Federal Rules of Civil Procedure have provided a well-stocked battery of discovery procedures, the rules governing criminal discovery are far more restrictive....

---

1206, 1209 (11th Cir.1981) (en banc).

> A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit. Judicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other. In some situations it may be appropriate to stay the civil proceeding. In others it may be preferable for the civil suit to proceed - unstayed. In the proper case the trial judge should use his discretion to narrow the range of discovery.

Id. at 487 (citations omitted).

Some district courts within the Eleventh Circuit, looking to case law from other Circuits, have examined a variety of factors in deciding whether to stay a civil proceeding due to a parallel criminal proceeding. See, e.g., United States v. Pinnacle Quest Int'l, No. 3:08-cv-136-RV-EMT, 2008 WL 4274498, at *1-2 (N.D. Fla. Sept. 11, 2008) (quoting Keating v. Office of Thrift Supervision, 45 F.3d 322, 324-25 (9th Cir.1995)); Healthsouth, 261 F. Supp. 2d at 1326 (citations omitted). The Eleventh Circuit, however, has assessed the presence of "special circumstances" or the "interests of justice" without reference to these factors. See, e.g., S.E.C. v. Wright, 261 F. App'x 259, 263 (11th Cir. 2008) (per curiam) (unpublished) (finding no special circumstances where there was no evidence that criminal case was unconstitutional or inappropriately instituted or that government's civil case was pretext to obtain evidence for criminal prosecution).

## **Analysis**

The United States contends that production of information in this case might lead the targets of the grand jury investigation to manufacture, conceal, or destroy evidence (Dkt. 218 at 15). The United States focuses on two discovery requests issued by the Former Executives. A request for production issued to WellCare seeks, among other things,

> all documents relating to any government investigation, including but not limited to

5

> ... any ... request for information or prosecution by any government agency, grand jury, regulatory body or law enforcement agency, including but not limited to ... any United States Attorney's Office ... relating to WellCare's relationship or dealings with AHCA....

(Dkt. 218 Ex. 1 at 7-8). Similarly, a subpoena that Bereday issued to the law firm Greenberg Traurig, a non-party, seeks the following:

> All documents relating to any government investigation, including, but not limited to, any investigation, inquiry, request for information or prosecution by any government agency [or] grand jury ... including but not limited to ... any United States Attorney's Office....relating to WellCare.

(Dkt. 218 Ex. 2 at 9-10). The United States also states that the Former Executives are in the process of noticing and scheduling depositions of potential government witnesses.

The Former Executives respond that they "are not seeking information regarding the grand jury investigation" but rather seek discovery of the facts alleged in Plaintiffs' complaint (Dkt. 228 at 14). The amended complaint refers to the government's criminal investigation in support of the allegations of fraudulent conduct and damages. While the Former Executives seek to depose third parties, such as attorneys or accountants who advised WellCare in the preparation of its AHCA reports or AHCA personnel, there is no suggestion that they intend to depose government investigators. To the extent the United States seeks to prevent the Former Executives from deposing third parties altogether, "[t]he government has no monopoly on access to potential witnesses in a criminal case..." S.E.C. v. Kornman, No. Civ.A. 3:04CV1803L, 2006 WL 148733, at *3 (N.D. Tex. Jan. 18, 2006). Moreover, the United States has not demonstrated that the production of third parties' business records will prejudice the criminal investigation; indeed, the United States initially declined to seek a stay because it believed the Former Executives' discovery requests were limited to such records. As some of these records may have been produced to the United States in the course

6

of its criminal investigation, such records "speak for themselves." Id. (finding production of third parties' records would not cause irreparable prejudice to criminal case). It is not apparent how production of third-party business records in this matter would prejudice the criminal investigation.

Delaying discovery in this case, however, would almost certainly prejudice the Former Executives in their defense of this suit. There is no reason to believe that the October 20, 2010 deadline for discovery and dispositive motions or the February 2011 trial date will be extended if discovery is stayed.[6] See, e.g., First Bank Bus. Capital v. Agriprocessors, Inc., No. C08-1035, 2009 WL 2584842, at *7 (N.D. Iowa Aug. 18, 2009) (finding stay would prejudice parties after rejecting government's assumption that the case deadlines or trial date in the civil case would be extended). Assuming discovery were stayed for 120 days from the date the United States filed its motion, i.e., to September 13, 2010, the parties would have 37 days before the discovery and dispositive motion deadlines for, inter alia, each side to conduct as many as 240 hours of depositions. Such a scenario is untenable. Even if the parties agreed to continue discovery beyond the deadline, it is possible that a substantial amount of evidence would be unavailable for inclusion in dispositive motions.

The potential for prejudice to Plaintiffs is real as well. While supporting the United States' motion, Plaintiffs apparently assume that the case deadlines and trial date would be extended if the stay is granted. Because Plaintiffs have already manifested their intent to take 30 depositions, Plaintiffs could easily be prejudiced should their assumption prove false.

Regardless of any other factors, a stay of discovery is not warranted based on the current record. The United States has not demonstrated that the grand jury investigation will be adversely

---

[6] At a January 6, 2010 status conference, the District Judge advised the parties that this case would be tried within three years of when it was filed as required by the Civil Justice Reform Act and this court's Local Rules (Dkt. 161 at 41:18-22).

affected absent a stay. Moreover, there is little doubt that the parties would be prejudiced given the brief period of time that would remain between the end of the requested stay and the case deadlines and trial date.

However, consistent with the Former Executives' representations as to the nature of the discovery sought, their current and future discovery requests must be tailored to avoid encompassing "information regarding the grand jury investigation." This includes documents received by a party or third-party from the government or a grand jury in connection with a criminal investigation. Any deposition questions should similarly avoid delving into such matters. Subject to these limitations, the discovery at issue in this matter will be substantially different from that sought in Campbell. See, e.g., United States v. Gieger Transfer Serv., 174 F.R.D. 382, 385 (S.D. Miss. 1997) (distinguishing Campbell because request to depose former co-defendant was "vastly distinct" from demand for government's investigative records).

Should the Former Executives alter the nature of their discovery requests in a way that might prejudice the criminal investigation, the United States is not precluded from renewing its request for a stay. See Kornman, 2006 WL 148733, at *4 (emphasizing that government could renew motion for stay should future civil discovery cause prejudice to criminal case). To protect against such prejudice, the Former Executives shall serve the United States with copies of any pending discovery requests or subpoenas within 7 days of the date of this order. A copy of any future discovery request or subpoena issued by the Former Executives shall be served on the United States 3 days before it is served on the recipient. The Former Executives shall simultaneously serve the United States with any deposition notice. A representative of the United States shall be permitted to observe any

deposition taken by the Former Executives in this matter.  See, e.g., id. at *3.[7]

Accordingly, and upon consideration, it is **ORDERED and ADJUDGED** that:

(1)  The United States' Amended Motion for an Immediate Limited Stay of Discovery (Dkt. 218) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on this 3rd day of June, 2010.

ELIZABETH A JENKINS
United States Magistrate Judge

---

[7] In Kornman, the parties stipulated to the presence of a prosecutor at civil depositions. See 2006 WL 148733, at *3.  The Former Executives' concern that deponents might be intimidated by the presence of a prosecutor is outweighed by the United States' interest in ensuring that discovery in this matter does not seek information relating to the grand jury investigation. Although the United States must be served with copies of deposition notices and be permitted to attend, the parties are not obligated to coordinate depositions with the prosecutor's schedule.