```
          UNITED STATES DISTRICT COURT
           MIDDLE DISTRICT OF FLORIDA
                 TAMPA DIVISION
```

EASTWOOD ENTERPRISES, LLC,
Individually and on Behalf
of All Others Similarly Situated,

    Plaintiffs,
v.                              Case No. 8:07-cv-1940-T-33EAJ

TODD S. FARHA, PAUL L. BEHRENS,
THADDEUS BEREDAY, and
WELLCARE HEALTH PLANS, INC.,

    Defendants.
_____/

## ORDER APPROVING DISTRIBUTION PLAN

Lead Plaintiffs, on notice to counsel for Defendant WellCare Health Plans, Inc., moved this Court for an Order approving a distribution plan for the Net Settlement Fund on March 19, 2013. (Doc. # 288). No responses in opposition to the Motion for Approval of Distribution Plan have been filed and the time to file such responses is now elapsed. Therefore, the Court considers the Motion as unopposed.

Having considered all the materials and arguments submitted in support of the Motion, including Lead Plaintiffs' Memorandum of Law in Support of Motion for Approval of Distribution Plan and the Declaration of Stephen J. Cirami in Support of Lead Plaintiffs' Motion for

Approval of Distribution Plan (Doc. # 289), the Court grants the Motion for Approval of Distribution Plan.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

1. Lead Plaintiffs' Motion for Approval of Distribution Plan (Doc. # 288) is **GRANTED** as set forth below.
2. This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated December 17, 2010 (Doc. # 265-1) (the "Stipulation") and the Cirami Declaration (Doc. # 289) and all terms used herein shall have the same meanings as set forth in the Stipulation and the Cirami Declaration.
3. This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Class Members.
4. Lead Plaintiffs' plan for distribution of the Net Settlement Fund to Authorized Claimants is **APPROVED**. Accordingly,
    (a) The administrative recommendations of the Court-approved Claims Administrator, The Garden City Group, Inc. ("GCG"), to accept the Timely Eligible Claims set forth in Exhibit C-1 to the Cirami Declaration (Doc. # 289-6) and the Late

But Otherwise Eligible Claims set forth in Exhibit C-2 to the Cirami Declaration (Doc. # 289-7), are adopted;

(b) The Claims Administrator's administrative recommendations to reject wholly ineligible or otherwise deficient claims, as set forth in Exhibit C-3 to the Cirami Declaration (Doc. # 289-8), including the Disputed Claims set forth in Exhibit B (Doc. ## 289-2, 289-3, 289-4) to the Cirami Declaration, are adopted;

(c) GCG is directed to conduct an initial distribution (the "Initial Distribution") of the available balance of the Net Settlement Fund, after deducting the payments previously allowed and requested herein, and after payment of any estimated taxes and the costs of preparing appropriate tax returns and any escrow fees, as set forth in paragraph 47(a) of the Cirami Declaration. Specifically, as set forth in paragraph 47(a) of the Cirami Declaration, (i) any Authorized Claimant whose Distribution Amount calculates to less than $10 shall not receive any payment from the Net Settlement Fund; (ii)

3

    Authorized Claimants whose calculated Distribution Amount (after removing from the calculation all Claims that fall under the $10 minimum payment threshold) is less than $100 shall be paid their full Distribution Amount ("Claims Paid in Full") and shall not be eligible for payment in subsequent distributions of the Net Settlement Fund; and (iii) after deducting the payments to the Claims Paid in Full, 95% of the remaining balance of the Net Settlement Fund shall be distributed on a pro rata basis to Authorized Claimants whose calculated Distribution Amount (after removing from the calculation all Claims that fall under the $10 minimum payment threshold) is $100 or more, with the remaining 5% of the Net Settlement Fund held in reserve (the "Reserve") to address any contingencies;

(d) In order to encourage Authorized Claimants to cash their Initial Distribution checks promptly and to avoid or reduce future expenses relating to unpaid Initial Distribution checks, all Initial Distribution checks shall bear the

4

    following notation: "CASH PROMPTLY. VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY [DATE 120 DAYS AFTER ISSUE DATE]." Lead Counsel and GCG are authorized to take appropriate action to locate and/or contact any Authorized Claimant who has not cashed his, her, or its Initial Distribution check within said time as detailed in paragraph 47(a)(6) footnote 10 of the Cirami Declaration;

(e) Authorized Claimants who do not cash their Initial Distribution checks within the time allotted or on the conditions set forth in paragraph 47(a)(6) footnote 10 of the Cirami Declaration shall irrevocably forfeit all recovery from the Settlement, and the funds allocated to all such stale-dated checks shall be available to be redistributed to other Authorized Claimants in the Second Distribution of the Net Settlement Fund described below. Similarly, Authorized Claimants who do not cash subsequent distributions within the time allotted or on the conditions set forth in paragraph 47(a)(6) footnote 10 of the Cirami Declaration shall

        irrevocably forfeit any further recovery from the Net Settlement Fund;

(f) After GCG has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks (as set forth in paragraph 47(a)(6) footnote 10 of the Cirami Declaration), but no earlier than one (1) year after the Initial Distribution, GCG shall conduct a second distribution (the "Second Distribution") of the Net Settlement Fund, pursuant to which any amount remaining in the Net Settlement Fund after the Initial Distribution (including the Reserve and the funds for all void stale-dated checks), after deducting GCG's unpaid costs and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of such Second Distribution), and after the payment of any estimated taxes and the costs of preparing appropriate tax returns, will be distributed to all Authorized Claimants from the Initial Distribution who (1) were not Claims Paid in Full, (2) cashed their Initial Distribution

6

      check, and (3) are entitled to at least $10 from the distribution based on their pro rata share of the remaining funds;

(g) In order to allow a final distribution of any funds remaining in the Net Settlement Fund after completion of the Second Distribution, whether by reason of uncashed checks, returned funds, tax refunds, or otherwise:

  (1) If cost effective, not less than six (6) months after the Second Distribution is conducted, a further distribution of the Net Settlement Fund, pursuant to which the funds remaining in the Net Settlement Fund, after deducting GCG's unpaid costs and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of such distribution), and after the payment of any estimated taxes and the costs of preparing appropriate tax returns, shall be redistributed to Authorized Claimants who cashed their Second Distribution checks and who would receive at least $10.00 from such

        redistribution, with additional redistributions thereafter in six-month intervals, subject to the conditions previously noted, until GCG and Lead Counsel determine that further redistribution is not cost-effective; and

  (2)  At such time as Lead Counsel and GCG determine that the redistribution of funds remaining in the Net Settlement Fund is not cost-effective, any otherwise valid late or late adjusted Proofs of Claim received after March 7, 2013 shall be paid in accordance with subparagraph (i) below.  If any funds shall remain in the Net Settlement Fund after payment of such late or late adjusted Claims, the remaining balance of the Net Settlement Fund shall be contributed to non-sectarian, not-for-profit 501(c)(3) organizations recommended by Lead Plaintiffs and approved by the Court;

(h)  All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted

8

herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are hereby released and discharged from any and all claims arising out of such involvement, and all Class Members, whether or not they receive payment from the Net Settlement Fund, are hereby barred from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amount allocated to Authorized Claimants;

(i) No further Proofs of Claims may be accepted for payment, and no further adjustments to Proofs of Claim may be made for any reason, after March 7, 2013, subject to the following exception. If Proofs of Claim are received or modified after March 7, 2013 that would have been eligible for payment or additional payment under the Court-approved Plan of Allocation had they been timely

received, then, at the time that GCG and Lead Counsel agree that a redistribution is not cost effective as provided in subparagraph (g)(2) above, such Claims may be paid the distribution amounts or additional distribution amounts on a pro rata basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks to the extent possible;

(j) Unless otherwise ordered by the Court, one year after the Second Distribution, GCG shall destroy the paper copies of the Proofs of Claim and all supporting documentation and, one year after all funds in the Net Settlement Fund have been distributed, GCG shall destroy electronic copies of the same; and

(k) All of GCG's fees and expenses incurred in connection with the administration of the Settlement and to be incurred in connection with the Initial Distribution of the Net Settlement Fund as set forth on Exhibit D to the Cirami Declaration (Doc. # 289-9) are approved, and Lead Counsel is directed to pay $497,325.51 out of the

       Settlement Fund to GCG in payment of such fees and expenses.

5. This Court retains jurisdiction to consider any further applications concerning the administration of the Settlement, and such other and further relief as this Court deems appropriate.

       **DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 24th day of April, 2013.

                                  VIRGINIA M. HERNANDEZ COVINGTON
                                  UNITED STATES DISTRICT JUDGE

Copies:   All Counsel of Record